UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

MICHAEL MINEO,

                                 Plaintiff,              **AMENDED
COMPLAINT**

          -against-

CITY OF NEW YORK; NEW YORK CITY       **JURY  TRIAL
DEMANDED**
POLICE  OFFICER RICHARD KERN, individually and
in his official capacity as a New York City Police Officer;
NEW YORK CITY POLICE OFFICER ALEX CRUZ,
individually and in his official capacity as New York City
Police Officer; NEW YORK CITY POLICE OFFICER       09-CV-2261(JBW)(ALC)
ANDREW MORALES, individually and in his
official capacity as a New York City Police Officer;
POLICE OFFICER NOEL JUGRAJ, individually and in
his official capacity as a New York City Police Officer;
NEW YORK CITY JOHN DOE POLICE OFFICERS,
the identity and number of whom are unknown,
individually and in their official capacity as New York City
Police Officers; and NEW YORK CITY POLICE OFFICER
JOE DOES, supervisory police officers of the City of
New York, the identity and number of whom are unknown,
individually and in their official capacity as New York City
Police Officers,

                                     Defendants.
-----------------------------------------------------------------------x

      Plaintiff, by his attorneys **SHAFRAN &  MOSLEY, P.C.**  and **STEPHEN C.**

**JACKSON, ESQ.,** as for his complaint against the defendants respectfully sets forth as

follows:

### JURISDICTION

      1.     This action is brought pursuant to 42 U.S.C. §§1983, 1985 and 1988 and the

Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is

founded upon 28 U.S.C. §§ 1331 and 1341 (3) and (4), and the aforementioned statutory and

constitutional provisions. Plaintiff further invokes the pendant jurisdiction of this court to

1

hear and decide claims arising under New York State Law.

## PARTIES

2.    Plaintiff is at all times hereinafter relevant, a resident of Kings County and the State of New York.

3.    The defendant THE CITY OF NEW YORK (hereinafter "CITY") is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York, having its principal place of business in the county and City of New York and that the New York City Police Department (hereinafter "NYPD" and/or "POLICE") is an agency and or branch of the defendant CITY and that defendant CITY is responsible, as a matter of law, for the ownership, operation ,management and control of the police and all of its officers, agents licensees and employees and all acts thereof.

4.    At the time of the occurrences complained of herein, and at all times relevant hereto, defendants POLICE OFFICER RICHARD KERN,  POLICE OFFICER ALEX CRUZ, POLICE OFFICER ANDREW MORALES, and POLICE OFFICER JOEL JUGRAJ, JOHN DOE POLICE OFFICERS, the identity and number of whom are unknown, in their official capacities as police officers for NYPD, and JOE DOE POLICE OFFICERS, the identity and number of whom are unknown, in their official capacities as supervisors for police officers of the NYPD and defendant CITY, acted in their individual and official capacities as New York  City police officers and within the scope of their employment and under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State and City of New York.

2

5.     At the time of the occurrences complained of herein, and at all times relevant hereto, said defendants were acting individually and in their official capacity as New York City police officers and/or officials of defendant CITY, pursuant to the direction of defendant CITY, and in furtherance of the scope of their employment and acting under color of law; and defendants were acting in furtherance of the scope of their employment and acting under color of law, to wit under of statues, ordinances, regulations, policies, customs and usages of the City, and the Police.

## INTRODUCTION

6.     This action is commenced by the plaintiff for pecuniary damages against defendants for committing acts under color of law and depriving the plaintiff of his rights secured by the Constitution and laws of the United States and the State of New York and pendant State law claims.

7.     Plaintiff alleges that defendant police officers were negligent in arresting plaintiff and in taking him into custody, and further that defendants committed the following wrongful actions against plaintiff including:  sexual assault, sodomy, assault, gross assault, wrongful detention, false arrest, false imprisonment, falsely accused and charged, excessive physical force, gross excessive force, prima facie tort, malicious prosecution, abuse of process, hate crimes, conspiracy, cover up, improper investigation, falsification of police documents, false issuance of a police document,  all in violation of plaintiff's civil rights and rights under 42 U.S.C. sections 1983 and 1985 and the common law and State and City law code, rules and or regulations.   Plaintiff seeks compensation, *inter alia*,   for the

unconstitutional and tortious conduct of police officers who are under a duty to protect citizens and report incidents of police misconduct and brutality but failed to do so.

8.    Plaintiff seeks redress against the defendant CITY for customs, policies and practices that permitted condoned, contributed, created and/or preserved a "blue wall of silence" environment in which police officers, even those that commit violent acts, believed that they would be insulated from a prompt and effective investigation prosecution and conviction for even their most brazen acts of brutality. The routine policy of New York City police officers to conceal acts of misconduct and crimes by fellow officers (which is condoned and encouraged by the higher officials), while all officers are under an affirmative legal duty to come forward with evidence of such wrongdoing contributes to the foregoing pattern and practice, and constitutes deliberate indifference to the constitutional rights of plaintiff and other citizens who encounter such officers. Plaintiff alleges that defendants, the CITY and the Police were negligent in training, hiring and supervising defendant police officers, thus leading to the negligent and improper acts complained of herein. Further, said occurrence was occasioned by the carelessness, recklessness and negligence of the defendants and their agents, servants, licensees and/or employees, governing the ownership, operation, maintenance, management and control of the police department in arresting and/or detaining plaintiff against his will and without cause and falsely, participating in said false arrest and detention, assault, failing to provide medical attention, failing to intercede to prevent wrongdoing, failing to properly supervise, and other mistreatment. When it had become clear that improper police conduct had occurred in said arrest and detention and treatment of plaintiff, rather than properly investigate the offending officers as criminal

suspects, defendant CITY ratified their conduct and made public statements supportive of the officers and critical of plaintiff's rendition of the facts, notwithstanding overwhelming evidence to the contrary, and notwithstanding that the Assistant Police Commissioner Paul Brown had not interviewed any of the officers on the scene or the plaintiff.

9.      The extraordinary injuries inflicted upon plaintiff are the result of the defendants unconstitutional conduct and indifference. The policies, customs and practices of defendant CITY of tolerating and condoning violations of citizens' constitutional rights by refusing to properly train officers for situations they will encounter; investigate misconduct; and punish instances of wrongdoing with certainty so as to act as a deterrent. Plaintiff alleges that defendant CITY and its policymakers have promoted an atmosphere in which police officers feel reasonably assured that evidence of misdeeds depriving citizens of their civil rights, no matter how awful, will be hidden by officers and covered up. The imposition of punitive damages against all defendants, with the exception of the City of New York, and other appropriate equitable relief plaintiff hopes will deter defendants and bring an end to this intolerable cycle of violence and silence.

10.      Prior to the filing of this complaint, the plaintiff duly filed a Notice of Claim on the defendant CITY in compliance with the New York State Municipal Law § 50 et. seq.

11.      More than thirty (30) days have elapsed and defendants have failed and refused to pay or adjust the claim and that plaintiff has complied with all conditions precedent or that such conditions precedent that may be outstanding have been waived or reserved by City pursuant to Stipulation.

## FACTUAL ALLEGATIONS

12.    On or about October 15, 2008 at approximately 12:50 p.m., plaintiff MICHAEL MINEO was lawfully situated at or near the Prospect Park Train/Subway Station, and its immediate vicinity, at or near the token booth area, in Brooklyn, New York.

13.    At the aforesaid time and place, the plaintiff was approached by uniformed police officers, including those identified in the caption hereof, forcefully knocked down to the ground, and held by several police officers and in the process of purportedly taking plaintiff into custody plaintiff was sodomized, sexually assaulted, assaulted, attacked and brutalized by defendant NEW YORK CITY POLICE OFFICERS and subjected to false arrest, false imprisonment, malicious prosecution, violations of the Penal Code and state and federal constitutional rights, prima facie tort and abuse of process by defendant police officers assigned, upon information and belief, to the 71st precinct.

14.    At the aforesaid time and place plaintiff  was beaten, knocked down, and sexually assaulted, surrounded, attacked and detained on the ground by at least five police officers, officers employed by the defendant CITY, and kicked and beaten, and that during the beating, with officers surrounding him, his pants were pulled down by police officers and an asp, baton or other piece of police equipment or other item was forcefully shoved and pushed into plaintiff's rectum and anus by upon information and belief defendant Kern, and that the other  individual defendant police officers did participate in the assault by holding plaintiff down and shielding him from view of other persons present. After the attack plaintiff, in handcuffs, was placed in a police patrol car against his will. Plaintiff bled profusely from his rectal area immediately following the attack. Plaintiff while in the patrol

car held his bloody hands up in plain view to the defendants and pleaded for medical assistance. The defendant officers callously ignored plaintiff's entreaty.

15.    Defendant police officers conferred with each other for a period of time while plaintiff was locked in the patrol car, handcuffed, to concoct and fabricate a story to attempt to insulate themselves from the wrongs that they had just committed. After fabricating a story, the defendants then conspired to conceal and hide their crimes by falsely arresting and detaining plaintiff and issuing plaintiff a "bogus" summons (annexed hereto as an Exhibit). Said summons, authored by defendant Kern (but with full knowledge and consent of other officers on the scene including all of the officers identified in the caption), was false and defective on its face because it contained erroneous information as to the events that occurred and it contained a return date that had passed and was meant by the officers to be bogus and have no legal effect so as to be part of the cover up by the defendants that was already underway.

16.    Plaintiff complained to defendant officers at the scene that he had been assaulted by them and that he had sustained injuries causing substantial pain and bleeding. Moreover, plaintiff requested medical assistance. The defendant police officers ignored plaintiff's pleas for help and visual observation of blood.

17.    After defendant Kern gave plaintiff the aforesaid bogus summons, the plaintiff was threatened not to report the incident to a police precinct or seek treatment at a hospital or he would be "charged with a top felony." Plaintiff was then ordered by defendant officers to leave the scene. Plaintiff obeyed the defendant officers' orders and met an acquaintance nearby who obtained transportation for plaintiff to a hospital.

18.    Over the next several weeks and months and thereafter defendants further engaged in their efforts to hide and conceal their crimes.  The New York City Police Department condoned, authorized, codified and ratified the defendant officers' actions complained of herein.  Official spokesperson of the New York City Police Department, the Assistant Commissioner Paul Brown, made public statements in the New York Times, Daily News, New York Post and other publications supporting the actions of the defendant officers (i.e. that the facts did not support the accusation) and indicated that such actions were within the scope of said officers' responsibilities and employment and that even the Police Commissioner did appear in public and did not condemn or disassociate the Police Department or City from the allegations of brutality that were already well publicized and purportedly investigated by his own Department  and that such conduct and actions by the spokesman and commissioner does constitute ratification of the conduct complained of herein.

19.    Defendant CITY permitted the defendant officers to continue their routine patrol functions until more than three weeks after the occurrence.  Defendant CITY took no disciplinary action against the defendant officers until a Transit police officer came forward as a witness in support of plaintiff's rendition of the facts approximately one month after the occurrence.  Spokespersons for the New York City Police Department stated publicly to the New York Times, Daily News, New York Post and other publications  that "neither witnesses nor the forensic evidence to support assignment modification or the (plaintiff's) claim" even though they were initially aware of witness statements and forensic evidence completely supportive of plaintiff's claims and such evidence would be supportive of placing

the accused officers on modified assignment.  The police department totally ignored medical evidence and failed to interview pertinent witnesses, including police officers and civilian witnesses present at the scene.  The New York City Police Department would have continued its policy and practice of ignoring police officers violating plaintiff's civil rights but not for the Transit police officer coming forth with evidence supportive of plaintiff's claims. Deliberate indifference is established in that the City was given notice of the possibility that its police officers were violating citizens' constitutional rights, and failed to make any meaningful investigation into the charges or failed to discipline subordinates who violated civil rights.

20.    Defendant CITY's failure to train its employees to properly handle encounters with citizens which are reasonably anticipated to be encountered as a matter of course evidences a deliberate indifference to the constitutional rights of those within its jurisdiction. Defendant CITY and the Police Department failed to establish such policies and procedures for instruction of its employees, or established policies and procedures but failed the implement them. Plaintiff contends that the aforesaid facts and circumstances demonstrates a direct causal link between defendant City's policy or custom, and the  constitutional deprivation alleged herein and such policy was the moving force behind the  constitutional violations alleged herein.

21.    Defendant CITY's failure to train amounts to deliberate indifference to the rights of those with whom police officers will come into contact. Defendant City knew to a moral certainty that its police officers will confront situations that either presents the officer with a difficult choice of the type that training will make less difficult or that there

is a history of police officers mishandling the situation; and that the wrong choice by the police officer frequently cause the deprivation of a person's constitutional rights. The City is liable where its police officers acted pursuant to an official policy, custom, or practice of said entity. Such a policy, custom or practice may be inferred where the municipality so failed to train its employees.

22.     Plaintiff was caused to sustain damages.  Plaintiff was caused to sustain serious injuries. Plaintiff was caused to suffer caused to suffer severe trauma both physically and mentally, requiring in-patient hospitalization. Plaintiff suffered unconscionable trauma, debasement and humiliation of being sexually assaulted in day light hours and publicly arrested and imprisoned without cause or justification.  Plaintiff was caused to sustain injuries that resulted in protracted hospital admissions at different hospitals, and anticipates future hospital admissions and treatment for physical, psychological and emotional injuries and other damages.

23.     All of the defendants and officers present on the scene are jointly and severally liable for all of the acts complained of and damages sustained by the plaintiff and responsible for the whole of plaintiff's damages herein and to extent Court determines that Article 16 of the CPLR applies one or more of the exceptions is applicable to this case.

24.     Subsequent to the October 15, 2008 attack on plaintiff, police officers acting individually and in their official capacity as police officers for the Defendant CITY, and in the scope of their employment and under color of state law, subjected plaintiff to further and different violations of plaintiff's civil rights.

25.     On or about September 14, 2009, in the borough of Brooklyn John Doe police officers subjected plaintiff to a retaliatory, unwarranted, unjustified unreasonable and unlawful arrest and imprisonment.  Plaintiff at the aforesaid time was accosted and harassed by John Doe police officers as he sat on a bench in a public park adjacent to his residence. After plaintiff produced identification to the said officers, upon information and belief, said officers  recognized plaintiff from the inordinate publicity and notoriety surrounding the events of October 15, 2008 and subjected him to a retaliatory, specious, false and wrongful arrest.  Plaintiff was incarcerated after said specious and wrongful arrest.  Adequate training, supervision and the application of appropriate policing policies and customs would have prevented the aforesaid incident. The conduct of such police officers demonstrated deliberate indifference to plaintiff's civil rights and due process, resulting from  a disregard and failure to institute appropriate policies, customs and training and a conspiracy to violate plaintiff's civil rights by defendants.

26.     Police officers employed by defendant CITY subjected plaintiff to further and other acts violating his rights and subjecting plaintiff to harassment. That on or about September 24, 2009 in the borough of Brooklyn John Doe police officers subjected plaintiff to another retaliatory, unwarranted, unjustified unreasonable and unlawful arrest and imprisonment.  This time, plaintiff was accosted by defendant unidentified police officers as he was lawfully riding inside of a subway car.  After producing identification to such officers, who upon information and belief,  recognized plaintiff from the inordinate publicity and notoriety surrounding plaintiff's case, they subjected him to a retaliatory, wrongful and specious arrest.  Plaintiff was incarcerated after his wrongful arrest.  Adequate training and

11

the application of appropriate policing policies and customs would have prevented the aforesaid incident. The conduct of such police officers, condoned by defendant CITY, demonstrated deliberate indifference to plaintiff's civil rights as a result of defendant City's failure to comport with proper and appropriate policies, customs and training, and a conspiracy to violate plaintiff's civil rights and due process.

27.    There were other and further incidents of harassment and violations of plaintiff's rights that occurred immediately after the October 15, 2008 incident. At such time, the plaintiff observed police officers following him without cause and causing intimidation. The incidents were reported to the Kings County District Attorney. Such incidents resulted in the commencement of an investigation by the Kings County District Attorney's office of police officers suspected of harassing the plaintiff. Adequate training, supervision, and the application of appropriate policing policies and customs would have prevented such incidents. The conduct of such police officers condoned by defendant City demonstrated deliberate indifference to appropriate policies, customs and training. Moreover, plaintiff was harassed and subjected to threats and verbal abuse by police officers in public settings. For example, the plaintiff was called a "faggot" by an unidentified defendant police officer, in a court room crowded with police officers supporting the defendant officers, while plaintiff attended the criminal arraignment of the of the defendant officers at State Supreme Court in Kings County. This incident was reported in the New York Daily News. Upon information and belief none of the above incidents resulted in the disciplining of any police officer, again evidencing a deliberate indifference to, and callous disregard of the rights of the plaintiff .

## AS AND FOR A FIRST CLAIM
### 42 U.S.C. SECTION 1983
### UNREASONABLE AND EXCESSIVE FORCE

28.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "27" of this complaint, with the same force and effect as is fully set forth herein.

29.     On or about October 15, 2008 the defendants acting under color of law, without probable cause, just cause, provocation or any reason to believe that plaintiff was engaged in any criminal activity, assaulted and battered plaintiff, sexually assaulted, grossly assaulted, excessively assaulted and committed aggravated assault  That the defendants deprived plaintiff of his constitutional right to be free from excessive and unreasonable force..

30.     By reason of the foregoing, plaintiff was caused to suffer personal injury, caused to suffer from ongoing physical injuries, pain and suffering,  mental anguish, apprehension and fear,  has  required hospitalizations and mental health care;  and to have incurred past, and will incur future medical and other expenses, and to have incurred loss of earnings and earnings ability and has otherwise damaged and injured in the sum of $20,000,000.00.

## AS AND FOR A SECOND  CLAIM
### 42 U.S.C. SECTION 1983
### FALSE ARREST AND IMPRISONMENT

31.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "30" of this complaint, with the same force and effect as is fully set forth herein.

32.    On October 15, 2008, the defendants, without just cause, negligently, wrongfully, willfully, maliciously and unreasonably seized plaintiff herein and deprived him of his liberty and subjected plaintiff to unreasonable, unconscionable, unjustified and unprovoked seizure and detention and subjected plaintiff to false arrest and imprisonment in violation of rights afforded him by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §§ 1983, 1985 and the common law of New York State.

33.    Upon information and belief, said actions were carried out and condoned by defendant CITY and NYPD their agents, servants and employees, including each of the officers set forth in the caption hereof, who were acting within the course or scope of their employment.

34.    Plaintiff was subjected to a violation of his civil rights, permanent damage to his reputation and standing in the community, extreme physical, mental and emotional harm and distress. Moreover, defendants actions also contributed to the deprivation of plaintiff's rights suffered on September 14, 2009 and September 24, 2009 at the hands of defendants John Doe police officers whose identities are unknown when plaintiff was subjected to retaliatory false arrests and imprisonments and improper targeting.

35.    By reason of the foregoing, plaintiff was deprived of his liberty, and was subjected to ridicule, scorn and derision by those knowing of his detention and plaintiff has been caused to suffer from ongoing physical injuries and mental anguish and to have incurred past, and will incur future medical and other expenses, loss of earnings and earnings ability and was otherwise damaged and injured in the sum of $20,000,000.00.

14

**AS AND FOR A THIRD CLAIM**
**42 U.S.C. SECTION 1983**
**DELAY AND DENIAL OF MEDICAL TREATMENT AND**
**FAILURE TO PROTECT WHILE IN CUSTODY**

36.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "35" of this complaint, with the same force and effect as is fully set forth herein.

37.     On October 15, 2008, by their conduct and under color of law, defendant police officers acted maliciously or at least with deliberate indifference in failing to protect plaintiff from the violence while in police custody and in failing to secure medical attention required for his serious injuries, in a manner that deprived him of his constitutional rights and perpetuated and exacerbated his physical and mental pain and suffering in violation of plaintiff's rights afforded him by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. sections 1983, 1985 and the common law of New York State  and his rights, privileges and immunities secured to Plaintiff by the United States Constitution and laws of the State of New York.

38.     By reason of the foregoing, plaintiff  has been injured and caused to suffer personal injury, from ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, which are continuing, and  has otherwise  been damaged in the sum of $20,000,000.00.

**AS AND FOR A FOURTH CLAIM**
**42 U.S.C. SECTION 1983**
**FAILURE TO INTERCEDE**

39.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "38" of this complaint, with the same force and effect as is fully set forth herein.

40.     By their conduct  and under color of law defendants Cruz, Morales, Jugraj, Joe Doe police officers, and John Doe officers each had opportunities to intercede on behalf of plaintiff to prevent the excessive force and unreasonable seizure but, due to their intentional conduct or deliberate indifference, declined or refused to do so.  Moreover, defendants actions also contributed to the deprivation of plaintiff's rights suffered on September 14, 2009, September 24, 2009,  and the other incidents as previously alleged herein, at the hands of defendants John Does police officers whose identities are unknown.

41.     By reason of the above, plaintiff has suffered great personal injuries,  ongoing physical injuries and mental anguish and has been caused  to have incurred medical and other expenses, loss of earnings and earnings ability, past and future,  and has otherwise been damaged in the sum of $20.000,000,00.

### AS AND FOR A FIFTH CLAIM
### 42 U.S.C. SECTION 1983
### SUPERVISORY LIABILITY

42.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "41" of this complaint, with the same force and effect as is fully set forth herein.

43.     On October 15, 2008,  the defendants, JOE DOE POLICE OFFICERS, at all times relevant herein, were supervisory personnel at the 71st Precinct or in the NYPD, with oversight responsibility for defendant officers Kern, Cruz, Morales and  Jugraj. They were

16

responsible for the training, instruction, supervision and discipline of the four officers who brutalized and otherwise interacted with plaintiff. Upon information and belief the aforesaid supervisory employees received complaints about the conduct of Kern, Cruz, Morales and Jugraj, and other officers in the 71st precinct and in the NYPD, knew about past complaints, aberrant behavior, and disciplinary infractions, or in the exercise of due diligence, would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to plaintiff and the public at large.

44.    These defendants knew, or in the exercise of due diligence would have known the conduct of Kern, Cruz, Morales and Jugraj directed against plaintiff would likely occur.

45.    As a matter of record defendant CITY settled two cases involving defendant Kern wherein it was alleged that he committed brutality and made false statements to prosecutors, as reported in the New York Daily News on or about November 6, 2008.

46.    These defendants failed to take preventative and remedial measures to guard against the brutality and cover up committed by defendants Kern, Cruz, Morales and Jugraj. Had they taken appropriate action, the plaintiff would not have been injured.

47.    For example, the NYPD received  a number of complaints regarding defendant Kern's excessive force on civilians. Although the Police Department investigators pronounced all of complaints unfounded, civil proceedings resulted in monetary payouts to civilians alleging excessive force . The Police Department failed to take corrective measures to prevent further and other acts of excessive force by defendant Kern even though they were aware of Kern's prior inappropriate behavior when dealing with civilians. The Police failed to comply with its own procedures relating police officers who had histories of misconduct.

The Police had an improper or inadequate policy  or procedure that permitted defendant Kern to remain on the force, even to this day.

48.    The failure of these individual supervisory defendants to supervise and discipline defendants Kern, Cruz, Morales, Jugraj and other officers at the 71 precinct and in the NYPD, constituted  negligence, deliberate indifference, or intentional misconduct which directly caused the deprivations suffered by plaintiff.  Moreover, defendants actions also contributed to the deprivation of plaintiff's rights suffered on September 14, 2009, September 24, 2009 and the other incidents as previously alleged, at the hands of defendants John Does police officers, whose identities are unknown.

49.    By reason of the foregoing plaintiff has suffered personal injury, suffered unlawful confinement, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and  has otherwise been damaged in the sum of $20,000,000.00.

## AS AND FOR A SIXTH CLAIM
### 42 U.S.C. SECTION 1983 - CONSPIRACY

50.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "49" of this complaint, with the same force and effect as is fully set forth herein.

51.    On October 15, 2008 and thereafter defendants Kern, Cruz, Morales, Jugraj and other members of the NYPD, under color of law, conspired with one another to deprive plaintiff of his constitutional rights, including the rights to be free from the intentional use of unreasonable force, to be free from unreasonable search and seizure, to associate and

speak freely, to have access to seek redress in the courts and to be free from false arrest, false imprisonment, and the delay and denial of medical attention.

52.     As part of the conspiracy, defendants Kern, Cruz, Morales and Jugraj did, among other acts, physically assault plaintiff including while he lay on his stomach with his hands cuffed behind his back and while in police custody.

53.     In furtherance of the conspiracy and in order to cover up the acts of brutality, defendants engaged in the following:

-     Falsely arresting and imprisoning plaintiff;

-     Fabricating and contriving criminal charges lodged against plaintiff;

-     Although they were aware of the brutality and were required to report it immediately, they deliberately suppressed the truth;

-     Submitted false police reports, statements and testimony to support and corroborate the fabricated charges lodged against plaintiff to insulate Kern, Cruz, Morales and Jugraj from administrative and criminal proceedings and sanctions;

-     Failed to submit true and accurate police documents and reports and failed to cooperate with law enforcement officials investigating plaintiff's claims.

54.     Moreover, defendants actions also contributed to the deprivation of plaintiff's rights suffered on September 14, 2009, September 24, 2009, and the other incidents as previously alleged, at the hands of defendants John Does police officers whose identities are unknown.

55.     By reason of the foregoing, the plaintiff has suffered personal injury, unlawful confinement, ongoing physical injuries and mental anguish and has been caused to have

incurred medical and other expenses, loss of earnings and earnings ability, past and future, and  has otherwise been damaged in the sum of $20,000,000.00.

### AS AND FOR A SEVENTH CLAIM
**42 U.S.C. SECTION 1983(3)**
**CONSPIRACY TO HINDER  PROVISION OF EQUAL PROTECTION**

56.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "55" of this complaint, with the same force and effect as is fully set forth herein.

57.    On or about October 15, 2008 and thereafter, the individual defendants conspired with each other and with others for the purpose of hindering and preventing the authorities of the State of New York from securing and proving plaintiff equal protection of the laws.

58.    In furtherance of the conspiracy, and to conceal the crimes and misconduct of Kern, Cruz, Morales, Jugraj and others engaged in a cover up.

59.    Among the actions taken in furtherance were false statements made to internal affairs investigations and the abdication of the officers' legal duty to report incriminating evidence to proper authorities.   Moreover, defendants actions also contributed to the deprivation of plaintiff's rights suffered on September 14, 2009, September 24, 2009 and the other incidents as previously alleged, at the hands of defendants John Does police officers whose identities are unknown.

60.    By reason of the foregoing, the plaintiff has suffered confinement, personal injury, ongoing physical injuries and mental anguish and has been caused to have incurred

medical and other expenses, past and future,  loss of earnings and earnings ability, past and future, and  has otherwise been damaged in the sum of $20,000,000.00.

### AS AND FOR AN EIGHTH CLAIM
**42 U.S.C. SECTION 1983 (3)**
**CONSPIRACY TO IMPEDE DUE COURSE OF JUSTICE**

61.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "60" of this complaint, with the same force and effect as is fully set forth herein.

62.    The defendants conspired to impede the due course of justice in New York State, with the intent of denying plaintiff the equal protection of the laws.

63.    By reason of the foregoing, the plaintiff has suffered confinement, personal injury, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses past and future,  loss of earnings and earnings ability past and future, and  has otherwise been damaged in the sum of $20,000,000.00.

### AS AND FOR A NINTH CLAIM
**42 U.S.C. SECTION 1986**
**ACTION FOR NEGLECT TO PREVENT**

64.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "63" of this complaint, with the same force and effect as is fully set forth herein.

65.    Upon information and belief, the defendants had knowledge that a 42 U.S.C. §1985(3) conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, neglected or refused to do so.

66.     Defendants could have, with reasonable diligence, promptly reported the brutality to superiors and to duly authorized investigators. Their failure contributed to plaintiff's suffering gratuitously before medical care was obtained for him and for ordering a seriously injured plaintiff to leave the scene and not go to a hospital or report the incident to the police or they charge plaintiff with the "highest felony," thereby exacerbating his pain and suffering. Moreover, defendants actions also contributed to the deprivation of plaintiff's rights suffered on September 14, 2009, September 24, 2009, and the other incidents as previously alleged, at the hands of defendants John Does police officers whose identities are unknown. .

67.     Had the defendants complied with the law and furnished truthful information to the authorities investigating the brutality, the plaintiff sustained on October 15, 2008 and the further and other violations plaintiff sustained thereafter, the § 1985 (3) conspiracy and § 1983 violations would not have succeeded to the extent that it did and continues.

68.     By reason of the foregoing plaintiff has suffered confinement, personal injury, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and has otherwise been damaged in the sum of $20,000,000.00

### AS AND FOR A TENTH CLAIM
### 42 U.S.C. SECTION 1983
### SYSTEMIC CLAIM AGAINST DEFENDANT CITY

69.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "68" of this complaint, with the same force and effect as is fully set forth herein.

22

70.     Prior to and inclusive of October 15, 2008, defendant CITY developed and maintained policies, customs and practices exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of plaintiff's rights.

71.     It was the policy and/or custom of defendant CITY to investigate inadequately and improperly civilian complaints of police misconduct and to punish inadequately those perpetrating such complaints even when such complaints are substantiated.  Instead acts of brutality were and are tolerated by defendant CITY, except in the rarest of cases.  The Internal Affairs Bureau and the Civilian Complaint Review Board ("CCRB"), which are controlled by the City, have failed in their responsibilities to investigate misconduct and to adequately discipline wrongdoing officers.

72.     According to a detailed report done in September 2007 by the New York Civil Liberties Union, the CCRB failed in the mission it is charged with in the City Charter. The report concluded that since the establishment of the CCRB in 1993, the board's oversight has failed and that there was little accountability for acts of police misconduct, inadequate training, or for flawed and dangerous police practices. The report found that even though complaints of police brutality have increased sharply over 5 years the CCRB closed more than half of all complaints without an investigation.  Complaints filed with the CCRB increased 65 percent between 2000 and 2005 (from 4,251 complaints in 2000 to 6.,796 filed in 2005). In 2006 civilians filed 7,669 complaints, an increase of 13 % relative to the number filed in the preceding year.  Between 2005 and 2006 allegations of excessive force increased 26.8 percent. And of the meager 5 percent of complaints substantiated by the CCRB, well below national averages, the police department has been rejecting the CCRB's findings and

recommendations with great frequency.  Complaints that accuse police officers of excessive force rarely result in discipline.  When discipline is imposed, it is more often than not "strikingly lenient in light of  the severity of the misconduct" documented by  the CCRB. The police department takes no disciplinary action against 30 percent of police officers whose charges were substantiated.  Moreover, the police department has consistently and persistently withheld documents or delayed the production of documents needed by CCRB to investigate police misconduct complaints. A CCRB spokesman in July 2008 went so far as to describe the  low discipline levels to apparently have become "policy" [referring to 2007] and that in 2008 an even lower number of officers were disciplined, as quoted in the New York Times.

73.    The New York City Commission on Police Corruption found in comprehensive reports in 2002 and 2004 that the police department conducted little if any case preparation related to complaints substantiated by CCRB. Complainants and witnesses are not contacted, and documentary evidence is not requested. The reports concluded that the police department failed to meet minimum standards of professionalism.

74.    Additionally, a report released recently by the CCRB criticized  the Police Department because it increasingly failed to prosecute officers who were found by a civilian review board to have been the subject of legitimate complaints, According to the report, the Police Department declined to prosecute 102 cases out of 296 substantiated complaints in 2007 as reported in the New York Times.

75.    Defendant CITY maintains no system or an inadequate system of review of police officers who withhold knowledge or give false information regarding misconduct of

fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "blue wall of silence" and often protects and shelters the corrupt officer, rather than safeguard the interests of the public.

76.    Defendant CITY, prior to and at the time of the incidents complained of herein, was aware of the need for additional or different training, rules, regulations, investigation and discipline,  regarding police officers who practice the "blue wall of silence" and was deliberately indifferent to that need and said deliberate inference fostered a climate wherein police officers were embolden to commit misconduct with minimal fear of reprisal. Such a climate was the proximate cause of the incident of October 15, 2008 and thereafter.

77.    Further, the policy and practice known as the "48 hour rule" prevents law enforcement from questioning police officers suspected of criminal conduct for at least 48 hours.  Police officers who commit crimes are the only class of criminal suspects in New York City insulated from prompt law enforcement interrogation.   The 48 hour rule encourages the destruction of evidence, the creation of cover up stories and the pressuring of witnesses.  The 48 hour rule, which often becomes a 480 hour rule, leads investigators to lose their intensity and focus as time draws on and as they begin to work on other items. The longer investigators must wait to question employees, the greater the possibility vital evidence may disappear or be lost.  The policy and practice known as the "48 hour rule" prevents law enforcement from questioning police officers suspected of criminal conduct for

at least 48 hours. Police officers who commit crimes are the only class of criminal suspects in New York City insulated from prompt law enforcement interrogation.

78.    The recent amendment to the 48 hour rule does not mandate immediate access to wrong doing officers nor abrogate the 48 hour shield. Separate and apart from the 48 hour rule, the policy and practice of the New York City Police Department not to make any investigatory pre-arrest contact with individual officers suspected of violent crimes, is special treatment that not only distinguishes those suspects who wear police uniforms from all others, but distinguishes New York from other cities' and jurisdictions' investigation of acts of police violence.

79.    Amnesty International has collected information on multiple cases of alleged ill-treatment or excessive force by New York City police officers dating from the late 1980s to early 1996. The allegations included people being repeatedly struck with fists, batons or other instruments, often after minor disputes with officers on the street; deaths in custody from alleged excessive force; and shootings in violation of the NYPD's own guidelines for the use of deadly force. There is a subclass of people that the police target and take advantage of, that the police can harass without fear of reprisal. According to the report a large majority of the victims of police abuses are racial minorities, particularly African-Americans and people of Latin American or Asian descent.  The reported concluded that there was a serious problem of police brutality and excessive force in the NYPD.  In many of the cases examined by Amnesty International international standards as well as US law and police guidelines prohibiting torture or other cruel, inhuman or degrading treatment have

been violated with impunity. In most of the cases studied, police officers were not prosecuted or disciplined or received only minor sanctions.

80.    The Mollen Commission found perjury and falsification of documents to be among the most common forms of corruption by NYPD officers.  The commission also concluded a number of officers insulated themselves from excessive force complaints simply by adding charges of resisting arrest to the arrest report - a practice rarely questioned by supervisors.  The Commission further found that several recent police corruption trials, following police, DA and CCRB investigations, have included charges that officers routinely covered up brutality by falsely filing assault charges against suspects.  Recently in a survey of a random sample of U.S. emergency physicians, 99.8 % said they believed that law enforcement officers used excessive force to arrest and detain suspects as reported by Emergency Medicine Journal, January 2009.

81.    These policies and practices operate to insulate police officers who engage in criminal or other serious misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference to that obvious and widely known effect.

82.    Police officers of the defendant CITY have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence regarding misconduct which they are aware, thereby perpetuating the " blue wall of silence."

83.    Defendant CITY has been deliberately indifferent to the need for additional or different training, rules, regulation relating to police officers who witness,  or have information regarding misconduct by fellow officers.  Defendant CITY has failed to properly

27

sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other NYPD police officers, thereby encouraging police officers, including the individual defendants in this case, to violate the rights of citizens like plaintiff.

84.    Defendant CITY has been deliberately indifferent to the need for additional or different training, rules, regulations in dealing with public during the course of its policing duties so as to avoid or minimize any violent and/or inappropriate interaction with citizens such as plaintiff.   Defendant CITY's failure to train amounts to deliberate indifference to the rights of those with whom police officers will come into contact.  Defendant CITY knew to a moral certainty that its police officers will confront situations that either presents the officer with a difficult choice of the type that training will make less difficult or that there is a history of police officers mishandling the situation(as plaintiff alleges); and that the wrong choice by the police officer frequently caused the deprivation of a person's constitutional rights.  Defendant CITY is liable where its police officers acted pursuant to an official policy, custom, or practice. Such a policy, custom or practice may be inferred where defendant CITY failed to properly and adequately train its employees, as is alleged herein, and is alleged to be a causative factor of plaintiff's injuries.

85.    Defendant CITY was aware for at least a generation that there was a pervasive systemic problem of police brutality involving the NYPD. Throughout the years defendant CITY's deliberate indifference to police brutality resulted in many egregious acts of constitutional violations by police, including but not limited to the following incidents:

2003, Ousmane Zongo, an unarmed African immigrant was shot and killed inside of a New York City warehouse.  A state supreme judge whose presided over the

28

police officer's criminal trial strongly criticized the police department stating that the officer was "insufficiently trained, insufficiently supervised and led insufficiently" as reported in the New York Times;

November, 2006 19 year old Sean Bell shot and killed by police while sitting in his car. Police discharged 51 bullets;

January , 2004. Timothy Stansbury, a 19-year old New York City teenager, was shot and killed by New York City Police Department Officer Richard S. Neri Jr.
.

February 4, 1999. Amadou Diallo was shot and killed by New York City police officers while unarmed reaching for his wallet;

August 1997. Abner Louima was sexually assaulted by New York City police officers;

December, 1994. Anthony Baez died after being arrested by NYPD Officer Francis X. Livoti;

Kevin Cedeno, shot in the back while holding a machete and running away from the police;

Eleanor Bumpurs, an elderly, mentally ill woman, killed by police who broke into her apartment to evict her for rent arrears;

Lewis Rivera, a man sitting and eating at a shopping mall, was chased by at least five police officers, sprayed with pepper spray, kicked, thrown to the ground, bound hand and foot, and dragged to a police car; he died less than an hour later in a holding cell;

Gidone Busch, a mentally ill man allegedly brandishing a hammer, shot by police twelve times;

Margaret Laverne Mitchell, a fifty-five-year-old mentally ill woman shot by a police officer after she allegedly lunged at him with a screwdriver;

Daniel Garcia Zarraga, shot and killed after police said he lunged at them with a "shiny object";

Yong Xin Huang, sixteen, shot at close range behind his left ear after what police allege was a struggle over an air gun;

Michael Stewart, a young African American who died in September 1983 13 days after being taken to hospital hogtied, bruised and in a coma following his arrest

29

by     11 officers from the New York City Transit Police Department for spraying graffiti in a Manhattan subway;

Grady Alexis, a 26-year-old Haitian artist, died in May 1991 after an altercation with an off-duty police officer and his friend;

Ann Hamilton, a 71-year-old black woman who was the wife of a prominent church minister, was allegedly brutalized in November 1988 by police officers who suspected her of drug dealing and swallowing the drugs as she sat in her car in an area of Queens;

Anthony Rosario and Hilton Vega were shot and seriously wounded my police officers on January 12, 1995 in the Bronx;

July 5, 2008 Christopher Long was body checked by an NYPD police officer as he rode his bike in Manhattan causing serious injuries. The incident only came to light because of a video tape of the incident;

2004 Republican Convention- NYPD officers subjected hundreds of innocent protestors, most with permits or official sanction, to false specious arrests resulting in a myriad of suits against the City.

86.     The aforesaid incidents, and the incidents complained of herein were the direct result of the City's deliberate indifference to its police officers violating the rights of its citizens and put the City on actual notice of the need to change and implement appropriate and adequate training and are the tip of the iceberg of police misconduct cases in the City of New York.

87.     By reason of the foregoing and as a direct result of defendant CITY's policies and its deliberate indifference,  plaintiff has suffered violation of his constitutional rights, personal injury, confinement,  ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and  has been otherwise damaged in the sum of $20,000,000.00.

**AS AND FOR AN ELEVENTH CLAIM**
**PENDENT CLAIM OF GROSS NEGLIGENCE AND NEGLIGENCE**

88.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "87" of this complaint, with the same force and effect as is fully set forth herein.

89.     The individual defendants and defendants JOE DOES have been grossly negligent and negligent in supervising, training, and monitoring of their representatives who consult with and counsel police officers who are witnesses to crimes and misconduct by their fellow officers.

90.     By virtue of the unique public safety considerations implicated by police violence, its pivotal role in official investigation of police misconduct, and its expressed undertakings, rules and regulations, defendant CITY and the individual defendants,  have a duty to make sure their agents and/or employees, who are also police officers, do not violate their duties as police officers to report crimes and misconduct by fellow officers.

91.     Defendant CITY and the individual defendants have been grossly negligent and negligent in the instruction and training they provide to their police officers regarding their responsibilities to report crimes or misconduct by other police officers.

92.     Defendant CITY and the individual defendants have been on notice for many years that their representatives have played a role in the improper obstruction of criminal investigations of NYPD police officers.

93.     Defendant CITY and the individual defendants knew or should have known that their policies and practices have contributed to improper concealment of evidence by police officers, and a "blue wall of silence" being followed by police officers to cover up crimes and misconduct.

94.    Defendant CITY and the individual defendants knew or should have known that their policies and practices, as well as their grossly negligent and negligent supervision and training, created an atmosphere where officers, even the most violent police officers, felt assured that their most brazen acts of misconduct would not be swiftly and effectively investigated and prosecuted.

95.    The mistreatment of plaintiff previously set forth, and the subsequent cover up of those events, were reasonably foreseeable results of defendant CITY's and the individual defendants' negligent conduct.

96.    By reason of the foregoing plaintiff has suffered personal injury, confinement, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and  has been damaged in the sum of $20,000,000.00.

### AS AND FOR A TWELFTH CLAIM
### PENDENT CLAIM OF ASSAULT AND BATTERY

97.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "96" of this complaint, with the same force and effect as is fully set forth herein.

98.    Defendants willfully caused plaintiff apprehension, non-consented to harmful and hurtful contact  and  physical harm.  The aforementioned actions of the defendants constituted assault and battery.

99.    Said acts of defendants were willful, unjustified, unwarranted, unprovoked and unwanted and were motivated solely by a desire to harm plaintiff without regard for plaintiffs' well-being or any lawful purpose.

100.    By reason of the foregoing plaintiff has suffered personal injury, apprehension and fear, confinement, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability, past and future, and  has been damaged in the sum of $20,000,000.00.

**AS AND FOR A THIRTEENTH CLAIM**
**PENDENT CLAIM OF FALSE ARREST AND  FALSE IMPRISONMENT**

101.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "100" of this complaint, with the same force and effect as is fully set forth herein.

102.    Defendants without provocation, sufficient cause or reason subjected plaintiff to an unlawful detention, arrest and imprisonment. That the aforementioned actions of the defendants on October 15, 2008 constituted false arrest and false imprisonment.

103.    By reason of the foregoing plaintiff has suffered confinement, ongoing physical injuries and mental anguish and has been caused to have incurred medical and other expenses, loss of earnings and earnings ability has been damaged in the sum of $20,000,000.00.

**AS AND FOR A FOURTEENTH CLAIM**
**PENDENT CLAIM OF MALICIOUS PROSECUTION**

104.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "103" of this complaint, with the same force and effect as is fully set forth herein.

105.    Defendants knew that there was no basis for the institution and prosecution of criminal charges against plaintiff on October 15, 2008. That the aforementioned actions

of the defendants constitute malicious prosecution.

106.    By reason of the foregoing, plaintiff was deprived of his liberty, and was subjected to ridicule, scorn and derision by those knowing of his detention and plaintiff has been caused to suffer from ongoing physical injuries and mental anguish and to have incurred past,  and will incur future medical and other expenses, loss of earnings and earnings ability and was otherwise damaged and injured in the sum of $20,000,000.00.

### AS AND FOR A FIFTEENTH CLAIM
### PENDENT CLAIM OF ABUSE OF PROCESS

107.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "106" of this complaint, with the same force and effect as is fully set forth herein.

108.    Defendants used their positions of authority to institute and perpetuate false and misleading charges against plaintiff. That the aforementioned actions of the defendants constituted abuse of process.

109.    By reason of the foregoing, the plaintiff was deprived of his liberty, and was subjected to ridicule, scorn and derision by those knowing of his detention and plaintiff has been caused to suffer from ongoing physical injuries and mental anguish and to have incurred past,  and will incur future,  medical and other expenses, loss of earnings and earnings ability,  and was otherwise damaged and injured in the sum of $20,000,000.00.

### AS AND FOR A SIXTEENTH CLAIM
### PENDENT CLAIM OF NEGLIGENT HIRING AND RETENTION

110.    Plaintiff repeats, reiterates and re-alleges each and every allegation

contained in paragraphs "1" through "109" of this complaint, with the same force and effect as is fully set forth herein. .

111.    Defendants were negligent in the hiring and retention of the named defendant officers. That the aforementioned actions of the defendants constituted negligent hiring and retention.

112.    By reason of the foregoing, the plaintiff was deprived of his liberty, confined, and was subjected to ridicule, scorn and derision by those knowing of his detention and plaintiff has been caused to suffer from personal injury, ongoing physical injuries and mental anguish, apprehension and fear and to have incurred past,  and will incur future medical and other expenses, loss of earnings and earnings ability,  and was otherwise damaged and injured in the sum of $20,000,000.00.

## AS AND FOR A SEVENTEENTH CLAIM
### PENDENT CLAIM OF FOR NEGLIGENCE INCLUDING
### FOR FAILING TO CARE, PROTECT, AND
### OBTAIN MEDICAL TREATMENT AND CONDUCT A PROPER
### INVESTIGATION AND OTHERWISE

113.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "112" of this complaint, with the same force and effect as is fully set forth herein.

114.    As New York City police officers defendants Kern, Cruz, Morales and Jugraj and other unknown John Doe and Joe Doe police officers had a duty to care, protect, and obtain medical treatment for plaintiff while in their custody.

115.    Defendants knew or should have known about the severe injuries plaintiff had suffered and were negligent in their failure to protect him from further injury and their

failure to prevent an unconscionable and unnecessary denial and delay in medical treatment and transport to a hospital.

116.    Defendants were  negligent in all of their interaction with plaintiff including but not limited to their initial contact, subsequent contact, apprehension of plaintiff  and in use of police equipment and in use of force to apprehend and/or detain plaintiff  and in otherwise placing plaintiff into custody and issuing a summons and subsequent interaction and direction to plaintiff  not to go to the hospital or report the matter to the police .

117.    Defendants were negligent in failing to call a supervisor to the scene, in failing to properly issue legal process, in failing to assist a citizen whom they knew or should have known required assistance and for a whom a special duty had been created, and that defendants failed to comply with police custom, practice and usage as well as the NYPD Patrol Guide  in all of their interaction with plaintiff including but not limited to their initial contact, subsequent contact, apprehension of plaintiff  and in use of police equipment and in use of force to apprehend and/or detain plaintiff  and in otherwise placing plaintiff into custody and issuing a summons and subsequent interaction and direction to plaintiff . Thereafter, defendants were negligent in all aspects of the investigation of the initial assault, in allowing the officers to remain on duty notwithstanding the gravity of the charges, including in failing to secure evidence and conduct and investigation, in failing to take plaintiff's complaint's seriously and to give it equal weight with the version of events purportedly proffered by defendants (if they even made any statements to investigators) and defendants were negligent and callous in failing to protect plaintiff from being the target of retaliatory treatment of other officers.  Further, such negligence manifests itself in the

36

multiple public statements made by high level Police officials that plaintiff's version of events was fabricated and the defendants' was true, notwithstanding that the official that made the statements had never even interviewed any of the participants of the events of that October 15, 2008 and that forensic evidence supported plaintiff. Such negligence and lack of care contributed to the sense of lawlessness that surrounds the NYPD and its officers, and contributed to the subsequent acts of misconduct (those alleged to have occurred after October 15, 2008) as it concerns plaintiff Michael Mineo and causes him to further fear future retaliations; and that defendants were otherwise negligent.

118.    By reason of the foregoing, plaintiff was caused personal injury, deprived of his liberty, was confined, and was subjected to ridicule, scorn and derision by those knowing of his detention and plaintiff has been caused to suffer from ongoing physical injuries and mental anguish and to have incurred past, and will incur future medical and other expenses, loss of earnings and earnings ability, and was otherwise damaged and injured in the sum of $20,000,000.00.

## AS AND FOR AN EIGHTEENTH CLAIM
### FOR DECLARATORY RELIEF

119.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs "1" through "118" of this complaint, with the same force and effect as is fully set forth herein.

120.    The plaintiff seeks a declaratory judgment that defendant CITY institute mandatory re-education, by an independent body, and training for any officer who is the subject of a civilian complaint of misconduct, a defendant in civil suit of excessive force, or other police misconduct, and that pending the successful completion of such training and re-

education, said officer will be suspended from the police force so as to avoid risk of injury to the public and to enhance public confidence in the Police Department.

121.   The plaintiff seeks a declaratory judgment that defendant CITY institute training, practice and procedures relative to encounters with civilians wherein use of force and police equipment will be clearly defined so as to limit and reduce the risk of injury to the public.

**WHEREFORE**, the plaintiff demands judgment against the defendants:

a) In the first cause of action in the sum of $20,000,000.00;

b) In the second cause of action in the sum of $20,000,000.00;

c) In the third cause of action in the sum of $20,000,000.00;

d) In the fourth cause of action in the sum of $20,000,000;

e) In the fifth cause of action in the sum of $20,000,000.00;

f) In the sixth cause of action in the sum of $20,000,000.00;

g) In the seventh cause of action in the sum of $20,000,000.00;

h) In the eighth cause of action in the sum of $20,000,000.00

i) In the ninth cause of action in the sum of $20,000,000.00;

j) In the tenth cause of action in the sum of $20,000,000.00;

k) In the eleventh cause of action in the sum of $20,000,000.00;

l) In the twelfth cause of action in the sum of $20,000,000.00;

m) In the thirteenth cause of action in the sum of $20,000,000.00;

n)  In the fourteenth cause of action in the sum of $20,000,000.00;

o) In the fifteenth cause of action in the sum of $20,000,000.00;

p) In the sixteenth cause of action in the sum of $20,000,000.00;

q) In the seventeenth cause of action in the sum of $20,000,000.00

r) In the eighteenth cause of action declaratory relief as set forth in the Amended

Complaint,

as well as reasonable attorney fees and punitive damages, and for such other and further

relief as this Court deems just, equitable and proper.


Dated:          New York, New York
                October 12, 2009

                                          SHAFRAN & MOSLEY, P.C.
                                          Attorney for Plaintiff
                                          350 Fifth Avenue, Suite 2310
                                          New York, New York 10118
                                          (212) 631-7000

                                          -/s/--------------------------------
                                          Kevin L. Mosley

                                          STEPHEN C. JACSON, ESQ.
                                          Of Counsel
                                          350 Fifth Avenue, Suite 2310
                                          New York, New York 10118
                                          212-643-2394

                                          -/s/----------------------------------
                                          Stephen C. Jackson

39

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MICHAEL MINEO,

                              Plaintiff,                 **AMENDED COMPLAINT**

       -against-

CITY OF NEW YORK; NEW YORK CITY        **JURY  TRIAL**
POLICE  OFFICER RICHARD KERN, individually and  **DEMANDED**
in his official capacity as a New York City Police Officer;
NEW YORK CITY POLICE OFFICER ALEX CRUZ,
individually and in his official capacity as New York City
Police Officer; NEW YORK CITY POLICE OFFICER   09-CV-2261(JBW)(ALC)
ANDREW MORALES, individually and in his
official capacity as a New York City Police Officer;
POLICE OFFICER NOEL JUGRAJ, individually and in
his official capacity as a New York City Police Officer;
NEW YORK CITY JOHN DOE POLICE OFFICERS,
the identity and number of whom are unknown,
individually and in their official capacity as New York City
Police Officers; and NEW YORK CITY POLICE OFFICER
JOE DOES, supervisory police officers of the City of
New York, the identity and number of whom are unknown,
individually and in their official capacity as New York City
Police Officers,

                               Defendants.
-------------------------------------------------------------------x

                            **SHAFRAN & MOSLEY, P.C.**
                            **Attorney for Plaintiff**
                            **350 Fifth Avenue, Suite 2310**
                            **New York, New York 10118**
                            **(212) 631-7000**

                            **STEPHEN C. JACKSON, ESQ.**
                            **OF COUNSEL**
                            **350 Fifth Avenue, Suite 2310**
                            **New York, New York 10118**
                            **(212) 643-2394**