UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MICHAEL MINEO,

                              Plaintiff,

          -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
OFFICER RICHARD KERN, individually and in his
official capacity as a New York City Police Officer,

                              Defendants.

------------------------------------------------------------------------ x

**DECLARATION OF
JOHANA V. CASTRO, ESQ.**

09 CV 2261 (JBW) (ALC)

      **JOHANA V. CASTRO**, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following statements are true and correct.

      1.      I am a Senior Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for defendant City of New York.  As such, I am familiar with the facts stated below and, as well, submit this declaration to place relevant documents on the record in support of defendant's motions *in limine*.

      2.      In support of its motions, defendant submits the exhibits described below:

          A.      Annexed hereto as Exhibit "A" is a copy of excerpts from Plaintiff's deposition, which was taken on May 14, 2010.

          B.      Annexed hereto as Exhibit "B" is a copy of excerpts from Plaintiff's testimony in the proceeding People v. Kern et al., Indict. No. 10628/2008.

          C.      Annexed hereto as Exhibit "C" are copies of documents regarding plaintiff's warrants.

Dated:        New York, New York
              November 5, 2010

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the City of New York
                              Attorney for Defendant City of New York
                              100 Church Street
                              New York, New York 10007
                              (212) 788-0976

              By:        _____
                              JOHANA V. CASTRO
                              Senior Counsel
                              Special Federal Litigation Division

# EXHIBIT A

```
 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2    ------------------------------------------X
      MICHAEL MINEO,
 3                                  PLAINTIFF,

 4              -against-           Case No.
                                    09cv2291
 5
      THE CITY OF NEW YORK, NEW YORK CITY
 6    POLICE OFFICER RICHARD KERN, Individually
      and in his official capacity as a New York
 7    City Police Officer; NEW YORK CITY POLICE
      OFFICER ALEX CRUZ, Individually and in his
 8    official capacity as a New York City Police
      officer; NEW YORK CITY POLICE OFFICER
 9    ANDREW MORALES, Individually and in his
      Official capacity as a New York City
10    Police Officer, POLICE OFFICER NOEL JUGRAJ,
      individually and in his official capacity
11    as a New York City Police Officer; NEW YORK
      CITY JOHN DOE POLICE OFFICERS, the identity
12    and number of whom are unknown, individually
      and in their official capacity as a
13    New York City Police Officers and NEW YORK
      CITY POLICE OFFICER JOE DOES, supervisory
14    police officers of the City of New York,
      the identity and number of whom are unknown
15    individually and in their official capacity
      of New York City Police Officers,
16                                  DEFENDANTS.
      ------------------------------------------X
17                     Date: May 14, 2009

18                     Time: 11:45 a.m.

19

20              DEPOSITION of the Plaintiff, MICHAEL MINEO,

21    taken by the Defendants, pursuant to a Court Order and to

22    the Federal Rules of Civil Procedure, held at the office of

23    Shafran & Mosley, P.C., 350 Fifth Avenue, New York,

24    New York 10118, before Vanessa L. Kennedy, a Notary Public

25    of the State of New York.
```

M. MINEO

1    Q.    Immediately prior to jumping the turnstile, were
2    you doing any other type of illegal activity?

3    A.    Yes, I was smoking marijuana.

4    Q.    You knew on October 15, 2008 smoking marijuana is
5    illegal?

6    A.    Yes.

7    Q.    And you were smoking marijuana immediately before
8    you ran from the police, correct?

9    A.    Correct.

10    Q.    Mr. Mineo, one of the allegations and this is on
11    page fifteen of your Complaint, is an allegation there was
12    a delay and denial of medical treatment on that date in
13    question?

14    A.    Yes.

15    Q.    On October 15th of 2008?

16    A.    Yes.

17    Q.    Okay.  Are you aware of that now that I've
18    mentioned that to you?

19    A.    Not that you mentioned it.  I'm aware because it
20    occurred.  I remember from my remembrance.

21    Q.    At any time on October 15, 2008, did you request
22    medical treatment from any officer?

23    A.    Yes.

24    Q.    Who did you request medical treatment from?

25    A.    Officer Kern and the officers that brought me

M. MINEO

1    A.    Sometimes.  It depends.

2    Q.    During the time that you worked at

3  Jiggaman Tattoos, did you file any tax return?

4    A.    No.

5    Q.    Why not?

6    A.    I didn't know I had to.

7    Q.    How did you come to be employed at

8  Jiggaman Tattoos?

9    A.    I just knew him from when I was homeless.

10    Q.    You now who?

11    A.    Jason.

12    Q.    So he gave you a job there?

13    A.    Yes.

14    Q.    Prior to working at Jiggaman Tattoos, were you

15  working anywhere?

16    A.    A bunch of different places.

17    Q.    Where is that?

18    A.    I couldn't go down the whole line.

19          MR. JACKSON:  As best you could.

20    A.    Primo Cappuccino, in Penn Station.  Popeyes, in

21  East New York.

22    Q.    The Primo Cappuccino, that's located inside

23  Penn Station?

24    A.    Yeah.

25    Q.    Do you recall when you worked there?

M. MINEO

1    A.    No, I don't.

2    Q.    Did you get paid hourly rates, was it minimum

3    wage?

4    A.    Yeah, I believe.

5    Q.    While you were employed there, did you pay taxes

6    on that money?

7    A.    I don't recall.

8    Q.    Have you ever filed a tax return?

9    A.    Not to my recollection.  I don't remember.

10   Q.    So we mentioned Popeyes, Primo Cappuccino,

11   anywhere else you've worked?

12   A.    Pioneer Supermarkets, in Queens.

13   Q.    When was that?

14   A.    I don't remember the year.

15   Q.    Do you recall how long you worked there?

16   A.    No, sir.

17   Q.    Do you recall what you did there for them?

18   A.    I worked in the deli.

19   Q.    Do you recall how much you were paid?

20   A.    No, I don't.

21   Q.    Do you recall how much or how long you worked

22   there?

23   A.    I don't recall.

24   Q.    Where was the Pioneer Supermarket located?

25   A.    63rd, Rico Drive.

M. MINEO

1    charges?

2        A.      Yes.

3        Q.      When was that?

4        A.      2000 -- I think it was 2009.

5        Q.      Do you recall what you plead guilty to?

6        A.      It was identity theft, I believe, and unlawful

7    use of a stolen credit card.

8        Q.      Do you recall if that was a misdemeanor or a

9    felony?

10       A.      I don't remember.

11       Q.      Do you know what you were sentenced to as a

12   result of that plea?

13       A.      Probation.

14       Q.      For how long?

15       A.      Four years.

16       Q.      Who supervises that probation is it New York or

17   Pennsylvania?

18       A.      Pennsylvania, but it was transferred to New York

19   because I don't have any family in Pennsylvania.

20       Q.      What was the name of your probation officer?

21       A.      P.O. Lamatta (phonetic).

22       Q.      Where is that office located?

23       A.      Downtown, Brooklyn.

24       Q.      Are there any specific conditions that you have

25   as a result of probation?

M. MINEO

1    Q.    You did speak to them?

2    A.    In the building, before I went to the trial.

3    Q.    Between October 16, 2008 and that time before you

4    testified at trial, did you have any contact with them

5    during that period of time?

6    A.    No.  No.

7    Q.    After October 15, 2008, did you email anyone or

8    twitter or Facebook, My Space, post, create any posts of

9    this incident?

10    A.    No, I didn't.

11    Q.    After October 15, 2008, were you ever arrested

12    again by the NYPD?

13    A.    Yes, I was arrested.  I don't remember the date.

14    I was arrested crossing a train car.

15    Q.    Does that mean from one car to the other?

16    A.    Yes, I was arrested sitting in a park and they

17    said I had a warrant for not showing up to court which is

18    for community service to show that I had a paper showing

19    that I completed community service, so I had a paper for

20    that.  I was locked up.  I had to go to Rikers Island

21    because I had to see the judge and came back that morning

22    and was released.

23    Q.    You were supposed to have shown proof to the

24    court that you completed community service?

25    A.    Which I had the paper in my pocket.

M. MINEO

1    Q.    But you didn't show up to court on the right day?

2    A.    I was going the next day.  The day I got arrested

3    was the day I was supposed to show up for court, so that

4    was resolved and then I was arrested for crossing the train

5    cars.

6    Q.    Do you recall when the arrest was in the park?

7    Do you recall the date on that?

8    A.    No, I don't.  I believe it was late summer;

9    September, August, September.  They both occurred -- they

10   happened a few weeks apart from each other.  I was

11   released.  I didn't get no paperwork.  They just told me

12   leave.

13   Q.    With the riding between the train cars, did you

14   receive a summons, were you arrested?

15   A.    I was arrested when I crossed the cars.  I got

16   out of the train they said "look, you crossed the cars we

17   are going to check if you have any warrants or anything."

18   They checked, they said "You have to come with us." I went

19   to central booking got fingerprinted, took pictures of me,

20   went through the whole system and they let me go.

21   Q.    What train was that?

22   A.    The L train at Broadway junction.

23   Q.    Broadway junction, is that in Brooklyn?

24   A.    Yes, Brooklyn.

25   Q.    Prior to that incident, were you ever arrested

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM - PART 35
- - - - - - - - - - - - - - - - - - - - - - - - X
THE PEOPLE OF THE STATE OF NEW YORK

- against -                                    Trial

RICHARD KERN, ALEX CRUZ, and ANDREW MORALES,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - X
Indict No. 10628/2008

                                320 Jay Street
                                Brooklyn, New York
                                January 25, 2010

B E F O R E

        HONORABLE ALAN D. MARRUS,
                        Justice, and a jury

A P P S A R A N C E S

        OFFICE OF CHARLES HYNES, ESQ.
        DISTRICT ATTORNEY, KINGS COUNTY
            Attorney for the People
            BY:  CHARLES M. GURIA, ESQ.
                 JEFFREY FERGUSON, ESQ.
            and  ELIZABETH MCEHLE, ESQ.,
                    Assistant District Attorneys.

        JOHN D. PATTEN, ESQ.
            Attorney for the Defendant Richard Kern.
            30 Vesey Street, PH Suite,
            New York, New York 10007

        WORTH, LONGWORTH & LONDON, LLP.
            Attorneys for the Defendant Alex Cruz.
            111 John Street, Suite 640,
            New York, New York 10038
            BY:  STUART LONDON, ESQ
            and  MICHAEL MARTINEZ, ESQ

RICHARD H.R. MURRAY, ESQ.
    Attorney for Defendant Andrew Morales.
    30 Vesey Street, PH Suite,
    New York, New York  10007

ERIC S. POLLYEA
and JUDITH BRUSCA,
Official Court Reporters

---

                                        468

1        THE COURT:  Before we begin the court

2   proceedings, I have applications again from several media

3   outlets for still and video photography of this session.

4   One of the applications actually is for the duration of

5   the trial.

6        I will only consider an application on a daily

7   basis, because I need to know whether or not any witness

8   has any objection to being photographed.

9        And I have asked the District Attorney whether

10  or not the witness who testified last week, and the

11  witness who is going to testify today had any objection.

12  And I was informed they did not.  Which was a very

13  important consideration for me.

14        So for the record, do the People have any

15  objection to any photography of this proceeding?

16        MR. GURIA:  Not for the next witness, Your

17  Honor.

18        THE COURT:  That's what I will do.  One witness

19  at a time.

20        And I know the defense objected last week to

21  the photography.  And I just want to know whether or not

22  so far, based on what happened last week, there is any

23  concern about the integrity of the proceedings as a

24  result of the photography session that we had on

25  Thursday.

                    ESP

---

                Proceedings              469

1   Mr. Patten?

2        MR. PATTEN:  Judge, I express my objection to

3   the cameras in the courtroom.  And same basic objection I

4   had the other day.

5        I will concede, however, that it didn't seem

6   to show any kind of disruptive activities by the part of

7   the media.  So --

8        THE COURT:  I would ask you to call it to my

9   attention at any point if you feel there is a problem,

10  because I as very concerned there would be, and at this

11  point I don't see one either.  Which is very important, a

12  very important consideration.

13        Mr. Murray?

14        MR. MURRAY:  I have no objection.

15        THE COURT:  And how about Mr. London?

16        MR. LONDON:  Again, Judge, I renew my objection

17  to the application.

18        But having said that, I agree with Mr. Patten

19  that there was no disruption that I was aware of at all.

20        And if something become apparent in the

21  future, we will bring it to the attention of the Court.

22        THE COURT:  Then I will grant the application

23  for the same basis as last week, that the media will have

24  the right to record the session under the rules that I

25  announced last week.  They have to stay in the same

                    ESP

1  Q   Just for clarification, when you talk about a
2  marijuana cigar, was it a full entire cigar?
3  A   No, it wasn't.  It was maybe anywhere from two to
4  three inches long.
5  (Indicating.)
6  Q   So, where is it that you light this marijuana
7  cigarette?
8  A   I lit it up while I was walking.  And it went out.
9  I had relit it in front of Wendy's.
10 Q   And just describing where you were by the Wendy's,
11 is there any physical attribute to the Wendy's as to where you
12 were when you lit, tried to relight it?
13 A   Yes, the Wendy's, there is an entrance door, and
14 there is like a service door where they can bring products,
15 like they bring the truck.
16 I was standing in front of the service door blocking
17 the wind, because it was wind blowing, and I couldn't get my
18 lighter to work.
19 Q   Does there come a point in time as you were doing
20 that, that your attention is directed to something?
21 A   Yes.  My co-worker LaShaun told me that there was
22 police driving directly behind us.
23 Q   In response to you being told that, do you actually,
24 do you look and see anything?
25 A   Yes.  I turned and looked back, and I saw a black

1  Impala with two people, and two officers in the Impala.
2  Q   How could you tell that the individuals in the
3  Impala were police officers?
4  A   Because they were dressed in uniform.
5  Q   Upon seeing them, where were they when you were
6  standing by the service door?
7  A   Driving directly behind me.  From the service door.
8  Q   Did you do anything in response to seeing the
9  officers?
10 A   I walked off, and put the marijuana clip in my
11 mouth, and ingested it.  I ate it.
12 Q   Now, after you did that, what happened next?
13 A   I began to walk off.
14 And the officer that was in the passenger came out
15 of the car and kept shouting, "Hey you, stop."
16 And I stopped.
17 Q   Now just to clarify, you said he was in the
18 passenger.  He was in the passenger what?
19 A   Of the black Impala.
20 Q   So, that officer got out of the Impala?
21 A   Yes.
22 Q   And what happened then?
23 A   He stopped me.  And he said, "Where is the weed?"
24 And I replied, "I don't know what you are talking
25 about?"

1  So he said, "Come on.  I still see it in the air."
2  It was smoke in the air.  Because I had a clip lit.
3  So I told him, "I don't have any marijuana."
4  So, he went in my pockets.  Pulled my things out,
5  and checked my stuff, and put it back in my pocket.
6  Q   What did you have in your pockets, Mr. Mineo?
7  A   I had a keys.  A set of keys for the shop.  And I
8  think about $2 to get on the dollar van.
9  Q   And at that point what happened next after that?
10 A   After that, the driver of the Impala came out.  And
11 asked the passenger of the Impala, the one that stopped me
12 initially.  and asked him, "Did you find it?"
13 And he replied to him, "No."
14 Q   Did there come a point in time when anybody else
15 joined yourself, and the driver of the Impala, and the
16 passenger of the Impala?
17 A   Yes.
18 Q   Who was that?
19 A   Two other officers.
20 Q   Did you see where they came from?
21 A   They came from my left-hand side.  Because I was a
22 little bit farther in front of the service door area.  I was
23 more in front of it.
24 So they were coming to my left, so I believe they
25 were coming from the sidewalk on to the side of the Wendy's

1  where I was at.
2  Q   And what happened once they arrived?
3  A   Once they arrived, the driver of the Impala asked
4  him again if he found anything.
5  He said, "No."
6  And he replied --
7  Q   He asked who?
8  A   He asked, the driver asked the passenger if he found
9  anything.
10 And he told him, "No."
11 And he said, "Well, we will still lock him up."
12 Q   At that point in time, Mr. Mineo, what if anything
13 did you do?
14 A   I ran.
15 Q   Now, you say you ran.  In what direction did you
16 run?
17 A   Across the street, bearing like towards the left to
18 go into the Prospect Park train station.
19 Q   Prior to that day, Mr. Mineo, had you ever been
20 arrested or convicted of a crime before?
21 A   Yes.
22 Q   And what had you been arrested for before that day?
23 A   Possession of marijuana.  A gang assault.  And
24 identity theft.  And credit card fraud.
25 Q   Now, let me just back up.  You had been arrested for

People - M. Mineo - Cross (London)

three years; correct?

A    Yes.

Q    So are times looking for you say we have
a warrant for your arrest?

A    No.

Q    Were you aware you had that warrant in
Pennsylvania or did you just forget about it?

A    No.  I knew I had a warrant.

Q    Why didn't you deal with it?

A    Because I ran.

Q    Why did you run?

A    Because I ran.  That is my explanation; I
ran.

Q    You like to run; don't you?

A    If that is what you want to say, yeah.

Q    You didn't want to accept your
responsibility; did you?

A    Yes.

Q    Yes, you did not want to accept your
responsibility; correct?

A    Yes.

Q    Now, after this case occurred on
October 15th of 2008, after this case did you then
have an opportunity to go back to Pennsylvania and
clear up that warrant?

JB

People - M. Mineo - Cross (London)

A    Yes.

Q    Now, that was $4,000 you had stolen;
correct?

A    Yes.

Q    You faced many years in jail for that
case; didn't you?

A    Yes.

Q    At least seven years in jail, correct?

A    Yes.

Q    It was a grand larceny case, right?

A    Oh man.

Q    You have to answer yes or no.

A    Yes.

Q    It was an identity theft case; wasn't it?

A    Yes.

Q    That is what you were charged with there;
correct?

A    Yes.

Q    How many years probation you're on;
three?

A    Four.

Q    Four years?

A    Four.

Q    Did you plead to a felony or a
misdemeanor there?

JB

People - M. Mineo - Cross (London)

A    It's a misdemeanor.

Q    With four years probation?

A    Yes.

Q    Did the Brooklyn DA's office help you in
resolving that matter?

Did they put you in touch with the right
prosecutors and help you vacate the warrant in that
case?

A    No.

Q    Did your civil lawyers help you vacate
the warrant in that case?

A    My civil lawyers?

Q    Yes.

A    I don't understand.

Q    You're suing for money?

A    Yes.

Q    You're suing for $400 million?

A    $10.

Q    Does that forty make a difference, Mr.
Mineo?

A    I was correcting you.

Q    Thank you.  I appreciate that.

A    You're welcome.

Q    The $440 million, you also had lawyers in

JB

People - M. Mineo - Cross (London)

A    Yes.

Q    Did they help you resolve the warrant you
have in Pennsylvania?

A    No.  I went to Pennsylvania and resolved
it myself because I was in the media, they knew where
I was at.  It was either have them come pick me up in
New York or go resolve it on my own.

Q    You didn't want to be on the stand and
have someone arrest you on the witness stand for
having an open warrant; did you?

A    No.

Q    Who did you take care of that
warrant?

A    I'm the one who I have take care of that
warrant.

Q    You went there by yourself back to
Pennsylvania?

A    Yes.

Q    When did you go back?

A    This was last year Connecticut
Connecticut.  I don't recall the day.  I believe May or
June.

Q    Did you go back by yourself.

A    Yes.

Q    Did you pay for any fines or anything

JB

# EXHIBIT C

Lancaster Co. PA Sheriff's Office

# THE COMMONWEALTH OF PENNSYLVANIA

To the Sheriff of Lancaster County, GREETING:

You are hereby commanded that you take **MICHAEL JUSTIN MINEO**
**427 MANOR ST.**
**LANCASTER, PA 17603**

if HE be found in your Bailiwick, and HIM safely keep so that you have HIS body before our Judges, at Lancaster, at our County Court of Common Pleas-Criminal Div., There to be held forthwith, to answer to a certain Bill of Indictment 2096CR2004

### ACCESS DEVICE ISSD TO ANOTHER WHO DID NOT AUTH U184106A1U        2 Counts

there pending against HIM And have you then there this Writ. Witness the HON. M.A. GEORGELIS, P. J. at Lancaster, the 29th day of October , in the year of our Lord, 2004

_Clerk of the Courts_

I, hereby deputize any Peace Officer to serve this Bench Warrant according to law, Witness my hand this _____

day of _____

_Sheriff of Lancaster County_

Bondsman: __ROR SELF__

Prosecutor: _CPL. KIMBERLY E. GEYER, MANOR TWP POLICE_

Description:

    Height:                                    DOB: 09/17/1984
    Weight:                                  Eyes:
    Color: HISPANIC                    Hair:

    Distinguishing Features:

    Known Aliases:

Personal Information

    SS#: 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                    PA DRIVER:
    Place of Employment:

TIME: 19:29 DATE: 08/30/07 PCT: 073   RET DATE:         A/O EXC:
ARREST LOC: 432   MARION STREET
NUM OF ASSOC:     ARREST ID'S:
WEAPON POSS/USED:                    TOP CHARGE METHOD:
CHARGE INFO:   ATT  LAW   SEC SUB   CLS TYPE CTS      DESCRIPTION
TOP CHARGE--> | N | LOC | 000 00 0V | V | 0 | 1 | VIO LOC/LAW VIO
TOTAL CHARGES |   |     |           |   |   |   |
COUNT = 1     |   |     |           |   |   |   |
ARR PROC:  O  |   |     |           |   |   |   |
              |   |     |           |   |   |   |
NARRATIVE:  AT T/P/O DEFT WAS OBSERVED MAKING UNNECESSARY NOIS
            E. DEFT WAS FOUND TO HAVE TWO ACTIVE WARRANTS. DOC
            KET # 2004QN047651 AND 2005NY059699.
VEHICLE: MAKE:      YR:        COLOR:
PROPERTY VOUCHERS: 1) NO:          CMD:    VAL:   TYP:
                   2) NO:          CMD:    VAL:   TYP:
                   3) NO:          CMD:    VAL:   TYP:

   PF3/PF15 - RETURN    PF11/PF23 - PRINTER SELECTION    PF12/PF24 - LOGOFF

IAB 1023

# Warrant of Arrest

## CRIMINAL COURT OF THE CITY OF NEW YORK

DATE OF ISSUANCE OF THIS WARRANT: **8/13/2007**

Name of Defendant:
**MINEO, MICHAEL**

Offense Charged:
AC10-125(b)(00)V

| Part: | Return Part: | County: | Docket No: | OCA No: |
|-------|-------------|---------|------------|---------|
| **SAP-W** | **SAP-W** | **KINGS** | **2007SK098053** | **A2007229758** |

### IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK:

TO ANY POLICE OFFICER WHOSE GEOGRAPHICAL AREA OF EMPLOYMENT EMBRACES EITHER THE PLACE WHERE THE OFFENSE CHARGED WAS ALLEGEDLY COMMITTED OR THE LOCALITY OF THE COURT BY WHICH THIS WARRANT IS ISSUED.

A CRIMINAL ACTION HAVING BEEN COMMENCED IN THIS COURT AGAINST THE AVOVE-NAMED DEFENDANT BY THE FILING THERWITH OF AN ACCUSATORY INSTRUMENT BEARING THE ABOVE DOCKET NUMBER CHARGING THE DEFENDANT WITH THE ABOVE-NAMED OFFENSE, AND THE DEFENDANT NOT HAVING BEEN ARRAIGNED UPON SUCH ACCUSATORY INSTRUMENT AND NOT HAVING COME UNDER THE CONTROL OF THE COURT WITH RESPECT THERTO, AND A JUDGE OF THIS COURT, WHOSE NAME IS SUBSCRIBED BELOW, FINDING THAT SUCH ACCUSATORY INSTRUMENT IS SUFFICIENT ON ITS FACE AND BEING SATISFIED THAT THE DEFENDANT WILL NOT RESPOND TO A SUMMONS.

AND, PURSUANT TO CRIMINAL PRECEDURE LAW ARTICLE 120, THE AFORESAID JUDGE OF THIS COURT HAVING ORDERED THE ISSUANCE OF A WARRANT OF ARREST.

NOW THEREFORE, YOU ARE DIRECTED TO TAKE INTO CUSTODY THE ABOVE-NAMED DEFENDANT WHO IS PARTICULARLY DESCRIBED BELOW AND, EXCEPT AS OTHERWISE PRESCRIBED IN CRIMINAL PROCEDURE LAW 120.90, FOLLOWING SUCH ARREST YOU MUST WITHOUT UNNECESSARY DELAY PERFORM ALL FINGERPRINTING AND OTHER PRELIMINARY POLICE DUTIES REQUIRED IN THE PARICULAR CASE AND BRING THE SAID DEFENDANT BEFORE THIS COURT FOR THE PURPOSE OF ARRAIGNMENT UPON THE ACCUSATORY INSTRUMENT BY WHICH SUCH ACTION IS COMMENCED.

CARL F. BROWN
S 'BSCRIPTION OF ISSUING JUDGE

I certify that this instrument constitutes a true copy of the warrant of arrest issued and subscribed by the above-named judge of the criminal court of the city of New York.

WILLIAM H. ETHERIDOE, CHIEF CLERK
CRIMINAL COURT, CITY OF NEW YORK

### DEFENDANT INFORMATION

AKA:

DOB: 9/17/1984     Age: 24

Sex: M     Ht: ft in     Hr: UNKNOW

Race: UNKNOWN     Wt: lbs     Eyes: UNKNOWN

Address: 490 MARION ST
BROOKLYN, NY, 11212

Opr Lic #     SSN:

### ARREST INFORMATION

Aao Name: HARDELL     Shield #

Arrest ID:     Date: 5/22/2006  Precinct:     Command: 0073

Dept/Agency: NY0303000     NYSID #     Tax Reg #

AC 10-125 0

IAB 1014