UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MICHAEL MINEO,

                                                                                         09-CV-2261 (JBW)(ALC)

                                    Plaintiff,

              -against-

CITY OF NEW YORK and NEW YORK CITY
POLICE OFFICER RICHARD KERN, et al,

                                  Defendants.
----------------------------------------------------------------x

**THE PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO THE CITY OF NEW YORK'S and KERN'S MOTIONS IN LIMINE**

Plaintiff MICHAEL MINEO submits the following Memorandum in Opposition to the City of New York's Motions In Limine and Officer Kern's Motion In Limine.

The defendants are, by their motions in limine, asking the Court to rule as to some matters which were already determined. As these issues were fully briefed and argued by all parties, and as the defendants have not presented change of circumstances or other reason for the Court to revisit these issues, the defendants applications should be denied except as to the Monell matters.

*Point I*
**The Court Should Permit Evidence at Trial of Past CCRB Complaints
and Lawsuits Against Kern, and the City's Settlement of Same,
for Purposes of Establishing *Monell* Liability and Issues of Non-Supervision**

Contrary to the arguments of defendants City and Kern, Civil Complaint Review Board Complaints, Internal Affairs Bureau Investigations, and civil and criminal complaints alleging police use of excessive force against Kern are admissible. The plaintiff does not offer this evidence to demonstrate Kern's propensity to commit the act at issue. Instead, evidence of past CCRB complaints, lawsuits, and other complaints against Kern are relevant to the Monell claims against

the City and also to the common law negligent retention and to demonstrate a pattern of non-supervision claims as the New York Police Department's failure to supervise and discipline Kern caused the constitutional harm suffered by the plaintiff.

Evidence concerning allegations of prior abusive conduct is admissible to establish to an official custom and practice of tolerating abuses of its citizens such that it amounted to deliberate indifference. For instance, in Fiacco v. City of Rensselaer, 783 F.2d 319, 327-28 (2d Cir 1986), the Second Circuit endorsed the use of evidence concerning a police department's lax investigation and evaluation of claims of excessive force to prove the plaintiff's Monell claim that his excessive force claim was a consequence of the department's "policy of nonsupervision amounting to deliberate indifference." 783 F.2d at 328; see also Skibo v. New York, 109 F.R.D. 58 (EDNY 1985). In Fiacco, supra, the Second Circuit explained:

> "… [I]n the context of a theory that the City negligently supervised its officers in their use of force, the evidence that a number of claims of police brutality had been made by other persons against the City, together with evidence as to the City's treatment of these claims, was relevant. Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force. The City's knowledge of these allegations and the nature and extent of its efforts to investigate and record the claims were pertinent to Fiacco's contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force. The fact that none of the claims had yet been adjudicated in favor of the claimant was not material; if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims." (emphasis added)

In DiSorbo v. Hoy, 74 Fed. Appx. 101, 103-04 (2d Cir. 2003), the Second Circuit found that the district court did not abuse its discretion when it permitted the jury in an excessive force case to consider evidence of another instance of excessive force in connection with the Monell claim. Specifically, after several trials, the jury found in favor of the plaintiff DiSorbo on her excessive

force, battery, and abuse of process claims against the individual police officer and on her municipal liability claim against the City. On appeal, the City argued that the District Court abused its discretion by admitting testimony on the size of the verdict and settlement received by another person as a result of a brutal attack he suffered at the hands of Schenectady police officers. Although the City maintained that this evidence presented a danger of unfair prejudice that substantially outweighed its probative value, the Second Circuit concluded that the District Court did not exceed its "broad discretion to balance the evidence's potential prejudice to the defendant against its probative value" and that, in fact, the evidence was relevant to the Monell claim, as it demonstrated the severity of a prior attack and established that the City was on notice of civil rights violations committed by its police officers. Further, any potential inflammatory effect on the jury's damages award to the plaintiff DiSorbo was mitigated by the court's instruction that the evidence "has no relevance to any damages you find plaintiff [in this case] was entitled to, nor does it have any relevance to the findings you have made as to the defendant [individual police officer's] misconduct." The Second Circuit held that a limiting instruction, substantially reduced any risk of unfair prejudice arising from the evidence's admission. Skibo, 74 Fed. Appx at 104.

In Sango v. City of New York, No. 83 CV 5177, 1989 U.S. Dist. LEXIS 18214 (E.D.N.Y. July 25, 1989), an excessive force case, the District Court held that prior CCRB complaints of "police brutality" against the individual police officers involved in the case, and the City's response to same, were admissible against the City to establish Monell liability. The Sango court, citing Fiacco, supra, explained that "the Second Circuit's opinion in Fiacco mandates admitting the contested records here [the CCRB complaints]...Because the probative value of the CCRB records

3

outweighs the danger of unfair prejudice, they should be considered in assessing the city's summary judgment motion. I also recommend that they be admitted into evidence at trial."

Civil complaints are admissible to demonstrate official notice. Where individual alleged that police officer assaulted her during roadside traffic stop and tried to reference unrelated litigation where officer was sued for civil rights violations, court denied officer's motion to strike those references because prior case might have proved to have some relevance to instant case, in that evidence of officer's prior misconduct may have been admissible, among other things, to prove that defendants, borough and police chief, had prior knowledge of such misconduct, or should have had such knowledge.  Lakits v York, 258 F Supp 2d 401 (ED Pa 2003).

Since the evidence is relevant and, in fact, essential, to establishing Monell, any supposed prejudice which may arise from its admission is far outweighed by its probative value.  Further, as the court stated in DiSorbo, any prejudice can be ameliorated by an appropriate charge to the jury explaining the limited purpose of the evidence.

Moreover, contrary to the defendants' argument, the law of the case doctrine does not bar plaintiff from offering proof of prior lawsuits, CCRB complaints or any other evidence related to the Monell allegations because this evidentiary issue was never previously decided by the Court. The law of the case doctrine dictates that a court may modify prior rulings when a fuller record has been developed or different circumstances develop.

At the time of the prior trial, the Court had bifurcated all discovery related to the City including any discovery related to Monell. See ECF Document # 64  The Court's various rulings in limine on May 25, 2010 were made in the context of an excessive force/false arrest case against the individual officers.  The City, although it participated in all of the oral arguments, was not a

direct defendant in that prior trial. It now is a defendant at the present trial where Monell and other issues of the City's liability will be addressed. Moreover, since the rulings of May 25, 2010, there has been Monell discovery.

In fact, the Court specifically stated during the May 25, 2010 in limine argument, as to the unsubstantiated CCRB and IAB allegations:

> "Mr. Jacobs: Similar to co-defendants, CCRB and IAB as regarding our clients nothing has been substantiated against our client [the City of New York] .
>
> The Court: It is not coming in. I'll revisit it at the time, if I get to it, at the Monel trial."

Proceedings, May 25, 2010 at p. 37,12-16.

Based upon the foregoing, although the Court did not previously decide this issue, it was only in the context of the claim against the individual officers on the first trial; the subject evidence should now be admitted at trial.

The argument that past lawsuits is inadmissable is also incorrect. The cases cited by defendant are mainly for the proposition that because of the public policy of encouraging settlements; a policy that is not implicated if the claims are offered simply to show that the city had notice of a particular practice. Moreover apparently, City credits civil lawsuits, at times with more weight than IAB proceedings. See eg Banks v. Yokemick, 144 F. Supp. 2d 272 (SDNY 2001) (Officer threw radio at fleeing suspect killing him and was found to have misused police equipment not excessive force in NYPD proceedings). In Banks, apparently, the 50K determination of indemnification (thus if the officer was subject to significant judgement) rested on whether the plaintiff won or lost the civil lawsuit– clearly showing civil lawsuits are an important indicator of police misconduct and notice to the NYPD of potential problems. Thus, City actually credits a

5

lawsuit with more weight than a NYPD internal finding on an ad hoc basis.

## Point II
## The Court Already Has Ordered that Reference to
## the Plaintiff's Subsequent and Prior Arrests and or Convictions is Inadmissable At Trial

On May 25, 2010, this Court previously ordered that the plaintiff's prior arrests and convictions were inadmissible at trial. Despite this, the defendants now raise the same issue.

On May 21, 2010, the Corporation Counsel, representing defendant police officer Jugraj, filed virtually the same in limine motion-- practically word for word– as filed Friday evening . See ECF Document # 98 [City of New York In Limine Motion]; compare Document 197 at page 12 and ECF # 98 at page 15. The plaintiff also filed an in limine motion to preclude reference to said information at trial on February 28, 2010. [ECF Docket # 57]. The matter was fully briefed by all parties at that time, including by the Corporation Counsel, acting by the same individual attorney as makes the present application. Thereafter, on May 25, 2010, the Corporation Counsel and all counsel orally argued the issue before the Court.

Present at the May 25, 2010 oral argument upon said in limine motion were Mr. Garber as well as Johanna Castro of the Corporation Counsel who submitted the prior In Limine Motion. Your Honor ordered, with respect to plaintiff's criminal record :

> "I want nothing with respect to the plaintiff's criminal record, except if he was on parole– was he?
> Mr. Garber:     Probation.
> Mr. Jackson:   Probation Your Honor
> The Court:     – that comes in. It is evidence of the reason why he would run or resist.[1]
> ****

---

[1] It is respectfully submitted that now that there is no longer a false arrest claim the reason why plaintiff ran may be irrelevant.  That plaintiff ran is undisputed.

6

      The Court:   Otherwise I want the case kept as simple and non prejudicial as possible."

May 25, 2010, p. 5, l2-11.

      The Court further ruled that

      "You can ask, if he should testify, whether he was on bail at the time, whether he was on probation at the time and whether that was the reason he ran. <u>I don't want any further details of the cases.</u> Further details of the cases are not sufficiently probative either of credibility or on the main charge. <u>The prejudice and undue duly that would result requires that cross examination be limited as I've just ruled</u>."

May 25, 2010, p. 6, l8-25 (emphasis added).

      The Court further ruled that:

      "You can ask about the warrant too, if there was a warrant outstanding...You can ask him - - <u>if in fact there was a warrant</u>." (emphasis added).

      When defense counsel made further argument concerning the Pennsylvania case and the Court ruled:
      "The Court: <u>I don't want anything further on it.</u> I want to keep the case as pointed as we can. I think I've given you sufficient basis ."

May 25, 2010 p. 7, 6-25 (emphasis added).

      Accordingly, the matter of plaintiff's prior criminal history and arrests has been ruled upon.

      As per defendant City's very first point in their in limine motion "the law of the case doctrine must be applied" to City's application regarding plaintiff's criminal history. The defendants have addressed no change in circumstances which would warrant any exception to the law of the case doctrine under these circumstances.

### *Point III*
### **Evidence that the Plaintiff Was on Bail Is No Longer Relevant in Light of the Limited Issues to be Addressed at the Present Trial**

      The defendant City cites <u>Williams v. McCarthy</u>, 2007 U.S. Dist. LEXIS 79151 (SDNY 2007) as support for the proposition that plaintiff being on bail should be admissible. Plaintiff argues that

7

there is no basis to admit said evidence at this trial. Since the time of the first trial, the circumstances have changed and there no longer is a false arrest claim, as there was in William, supra. The issue of whether plaintiff was on bail, used to explain why the plaintiff "ran," is no longer in issue and, therefore, evidence of him being on bail should now be excluded. The fact is, the plaintiff did run; the only issue that remains is the excessive force against him while he was on the ground. Since the evidence is not relevant to the issues to be tried, and since the prejudicial effect of said evidence far outweighs any possible probative value, it should be excluded.

*Point IV*
**The Court Already Has Ordered that Reference to the Plaintiff's Prior Alleged Substance Abuse Should Be Excluded**

On May 25, 2010, this Court made specific rulings as to the admissibility plaintiff's alleged marijuana use. At that time, all the parties, including Officer Kern, briefed and argued the issue. See Kern's prior in limine motion, Document 95 at page 8-10, ECF document #95 filed May 21, 2010. Thus the issue has been fully briefed and the Court has ruled that the alleged substance abuse is not admissible.

Specifically, the Court ordered as follows: "yes, that comes in with respect to his smoking at the time , but not his prior abuse of marijuana." May 25, 2010, at page 37, 7-8 (emphasis added).

Thereafter, this Court ordered that, if counsel sought to introduce any proof that marijuana effected recollection, an expert opinion would be required. "If you want an expert report to support the proposition that marijuana can have an adverse effect on your ability to observe recollect and control yourself, I'll call on the defendants to put in such an expert." May 25, 2010 at page 39, 3-8; also see page 42 (The Court "Then get yourself an expert [on marijuana]"). In any event, the issue

8

of whether defendants were going to even consider calling such a witness was resolved by stipulation between the parties.

The identical argument, word for word, in the City's instant In limine motion appears in the Motion In Limine filed by the Law Department in May 2010 prior to the first Mineo trial.  See ECF Document 98,  Filed 05/21/10 at Page 18-20. Compare City In Limine Motion dated 11/05/10, ECF # 197 at pages 16-18.  The matter was resolved and the In Limine motions should be denied.

### *Point V*
### Evidence of Kern's Marijuana Use Should Be Admissible

Of course, although the defendants argue that everything in the plaintiff's past should be "fair game," defendant Kern seeks to exclude evidence of his own marijuana use.  The difference is that the plaintiff is not a police officer and, unlike with Mineo where the defendant seeks to offer said evidence to undermine Mr. Mineo's credibility, the plaintiff wishes to offer evidence as to Kern's marijuana use primarily to show that the City failed to follow its own hiring practices and was otherwise negligent in its hiring.

Further, Kern's admitted use of marijuana in the past may have been a factor which the City should have considered when deciding whether to hire Kern, whether to investigate his application for membership to the police force more thoroughly, and whether to "monitor" officer Kern.  Past lawlessness should be a cause of concern to the NYPD as to issues of retention and supervision.  Indeed, Inspector Keane testified that Kern would be terminated if he possessed marijuana once he was hired.

Whether defendant Kern smoked marijuana one time or 100 times can not be firmly established absent the type of cross examination to which Kern's counsel subjected the plaintiff at the prior trial.  Moreover, defendant Kern testified that he was familiar with the smell of marijuana

and that when he got out of the police car and approached the plaintiff, he smelled marijuana. The jury should know of Kern's own experience in smelling marijuana as well. It would be manifestly unfair for the plaintiff to be the sole person whose past is subject to scrutiny, especially when Officer Kern is a police officer.

### Point VI
### The Issue of Plaintiff's Tax Returns Should Be Excluded As it Is Probative of Nothing

The defendants seek to admit evidence that the plaintiff failed to file income tax returns. Failing to pay income taxes is not, in and of itself, evidence of falsity or anything else, absent proof that the plaintiff had a duty to pay such tax and knowingly refrained from doing so. "The fact that a witness has not filed income tax returns is not, by itself, evidence of illegal conduct if that witness was not required by law to file a tax return." First Am. Bank v. Western DuPage Landscaping, Inc., 2005 U.S. Dist. LEXIS 20729 (00 C 4026 )(N.D. Ill 2005). Defendant has not shown that the plaintiff had a duty to file tax returns for any of the years for which they seek to offer evidence regarding his alleged failure to file. The IRS guidleines are daunting and the amount of income that a person must earn in order to file a return changes from year to year. Absent such proof, the defendants should be precluded from any cross examination on this point as it is unduly prejudicial and not probative of any type of dishonesty by Mr. Mineo.

In any event, since the prejudicial effect of such suggestions of illegality far outweigh the probative value of the evidence, said evidence should be excluded.

### Point VII
### Law Related to Indemnification of Officer Kern Raises Troubling Questions
### As To Which the Plaintiff Requests that the Court Inquire

The City states that "Kern is not seeking to proffer evidence regarding his personal financial resources and ability to pay punitive damages at trial." See the City's in limine motion, 11/0510 at

page 27-28. The plaintiff is concerned about this statement as there are unanswered questions as to the City's obligation to indemnify Officer Kern. Relative to the law on whether the plaintiff may offer proof of the indemnification statute, the general rule is that the plaintiff may offer evidence that the City may indemnify defendant Kern if Kern chooses to offer evidence concerning his financial resources. See <u>Tatum v. City of New York</u>, 06-cv-4290 (PGG)(GWG), 2009 U.S. Dist. LEXIS 52169 (SDNY 2009) citing <u>Mathie v. Fries</u>, 121 F.3d 808 (2d Cir. 1997) (holding that "a fact-finder can properly consider the existence of . . . an [indemnity] agreement as obviating the need to determine whether a defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded"); <u>Dallas v. Goldberg</u>,, 95-Civ.-9076(LTS), 2002 U.S. Dist. LEXIS 8829, 2002 WL 1013291, at *5 (S.D.N.Y. May 20, 2002) (holding in case against New York City police officers that "if Defendants proffer evidence of their financial resources, Plaintiff will be permitted to offer evidence of the State's indemnification statute and its recent application"). Thus, Kern's position that he will not address his personal financial resources during the trial suggests that the City is "calling the shots" – that to avoid the issue of indemnification, the City is obliging Officer Kern to take a position that is perhaps against Kern's financial interest is troubling.

It is unclear why Officer Kern would not have a response relative to General Municipal Law §50K and its indemnification provision after being acquitted in a criminal trial.

What is clear, however, if the City is waiting for the result of the instant lawsuit to determine whether Officer Kern had committed malfeasance or not, then one of plaintiff's theories that lawsuits are a proper measure of misconduct of police officers is completely validated. See eg <u>Banks v. Yokemick</u>, 144 F. Supp. 2d 272 (SDNY 2001) (Officer threw radio at fleeing suspect

killing him and was found to have misused police equipment not excessive force in NYPD proceedings). In Banks, apparently, the 50K determination rested on whether the plaintiff won or lost the civil lawsuit– clearly showing civil lawsuits are an important indicator of police misconduct and notice to the NYPD of potential problems.

## *Point VIII*
## Plaintiff Should Be Allowed to Present a Dollar Amount in Closing

Aside from City's concern that there will be a large award, there is no bona fide reason why the plaintiff should not be allowed to suggest a dollar amount to the jury during closing statements. Certainly the City will be suggesting that nothing, or merely nominal damages, be awarded. The plaintiff will be the one offering evidence of damages and he should be allowed to suggest to the jury what is reasonable to award.

Given that there may be various categories of damages, it will be useful to the jurors for the plaintiff to suggest an award in the categories where proof has been offered. There is no prohibition to counsel suggesting a damages award in summation and the plaintiff respectfully requests that the Court exercise its discretion to permit the plaintiff to address same. In Lightfoot v. Union Carbide Corp., 110 F.3d 898 (2d Cir. 1996), the Second Circuit stated that there was no per se rule prohibiting counsel from suggesting a specific sum as damages.

Plaintiff urges that the Court permit the plaintiff to suggest awards as to categories of damages that evidence has been admitted, such as past medical expenses, future medical expenses, past and future pain and suffering, etc. Defendant certainly will urge the jury to award minimal damages, or none, so it will be fair to permit the plaintiff to suggest an amount, and suggestion of an amount of damages will not prejudice defendant in any way. The plaintiff will, however, agree not to suggest a dollar figure in his openings. Also see Tatum v. City of New York, 06-cv-4290

12

(PGG)(GWG), 2009 U.S. Dist. LEXIS 52169 (SDNY 2009) (Court acknowledged no bar on monetary figure in closing and reserved decision).

### Point IX
### The Plaintiff Should Be Permitted to Interview Sarah Phillips

The plaintiff should be allowed to interview OCME witness Sarah Phillips. The plaintiff addresses the argument in his own in limine motion. Although the defendant may argue that blood on the asp is not admissible, such evidence is highly relevant to the Monell and the negligent hiring issues being decided at trial. There is no reasonable explanation as to why there would be blood on any officers asp, much less of the blood of three people. Said evidence would tend to show misuse of the asp in conformity with the lack of training.

Moreover, and even more importantly, there is no evidence at all that the NYPD investigated why the blood of three different persons was on officer Kern's asp when they learned of said fact in 2008. The failure to investigate supports the plaintiff's Monell claim. "Such tolerance in the form of failure to investigate, discipline or correct violations suggests an adoption of a policy supporting such violations." Hogan v. Franco, 896 F. Supp. 1313 (N.D.N.Y 1995).

### Point X
### The Defendant's Arguments as to "Abner Louima" Should Be Disregarded

The plaintiff is alleging the excessive use of force. The defendants are attempting to micro-catagorize said excessive force and arguing that only evidence as to past use of force exactly mimicking this event should possibly be admitted, of which type the defendants do not keep statistics. At the same time, they are arguing that Abner Louima, a situation where a similar assault did occur, should not be mentioned. Defendants can not fairly have it both ways. In any event,

13

plaintiffs claim is not so limited. Plaintiff alleges excessive force. Its cause is as a result, plaintiff alleges, of a variety of factors.

The plaintiff opposes the defendant's remaining contentions, which arguments will be made at oral argument.

Wherefore, the plaintiff respectfully requests that the Court issue an Order denying the relief sought by the defendants and granting that relief sought by the plaintiff, and for such other relief as the Court deems just and proper.

Dated:      November 7, 2010
            New York, N.Y.

                                        Respectfully submitted,


                                        /s/
                                        ----------------------------------
                                        Kevin L. Mosley
                                        (212) 631-7000
                                        SHAFRAN AND MOSLEY, P.C.
                                        Stephen C. Jackson
                                        (212) 643-2394
                                        Attorney for Plaintiff
                                        350 Fifth Avenue, Suite 2310
                                        New York, New York 10118