UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MICHAEL MINEO,                                    **09 CV 2261 (RRM)(MDG)**
                              Plaintiff,


                -against-


THE CITY OF NEW YORK, NEW YORK CITY
POLICE OFFICER RICHARD KERN,

                              Defendants.
----------------------------------------------------------------X

## THE PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO BIFURCATE

### Preliminary Statement

The plaintiff submits this Memorandum in opposition to the defendants' motions pursuant

to  Fed.R.Civ.P. Rule  42(b) to bifurcate the trial of liability and damages issues (and punitive

damages).  The trial should not be bifurcated.  Defendants have not sustained their burden of

showing the existence of any extraordinary circumstances in this case which would necessitate

bifurcation.  Defendants' argument of juror prejudice, in fact, could easily apply to every single

personal injury or police case, vitiating the Federal Rules of Civil Procedure altogether and

mandating that bifurcation become the rule rather than the exception.

Similarly, there has been no showing that a unified trial would unduly inconvenience

defendants, the Court, or litigants. The converse, however, is true.  Liability and damages are

inextricably intertwined in this case, including because the defendants have contested the occurrence

of excessive police force or that said occurrence produced the injuries at issue.

Here, the nature of the injury, itself, is evidence of the excessive force and battery alleged.

Judge Weinstein, at the two prior trial of this case, recognized this and, since the defendants

1

contested that an injury had occurred, it was necessary for plaintiff to offer proof of causation. Accordingly, Judge Weinstein allowed, in both prior trials, extensive medical proof as to damages, including three of plaintiff's treating physicians, the entire Brookdale Hospital record and Brooklyn Hospital Record (overall approximately 10 days of hospitalization), the operative report therein and other evidence as to the injury. Additionally, other witnesses testified as to their observations as to plaintiff and a video was played showing the plaintiff utilizing a companion for support after the event. Defendant also called a colo recatal surgeon to describe the injury and what he would expect vis a vis such an injury. As such, the issues of damages and liability are completely intertwined. Indeed, upon information and belief there is only one additional witnesses that plaintiff will call on the compensatory damages phase of the case who has not testified already, to wit, psychologist Rommell Washington.

Moreover, if there is a full trial of liability and damages, there will be no juror sympathy that cannot be cured by a properly framed jury instruction, which is what the Advisory Committee to the the Federal Rules advocates. "In exercising [its'] discretion, a court should begin its analysis with the Advisory Committee's admonition that 'separation of issues for trial is not to be routinely ordered.' Advis. Comm. Notes, 1996 Amend., FED. R.CIV.P. 42(b)." Lewis v. City of New York, 689 F. Supp.2d 417 (E.D.N.Y. 2010) (denying bifurcation in 1983 case with state law battery claim against NYPD).

Likewise, the argument that punitive damages should be tried in a separate proceeding makes no sense in this case. The cases cited by defendants include an asbestos cases where evidence of other cases was evidently a factor (and where bifurcation was denied) and a complex contract case. Here, the conduct of the defendant is required to be examined in light of the events that have just

occurred.   Therefore, this case cannot be compared to an asbestos case against a corporation or any case of that nature.   Defendants have failed to meet their burden on the punitive damages point in any way.

Moreover, the plaintiff has agreed, (and so advised defendants prior to the submission of their motions), to bifurcation of the <u>Monell</u> claim only, thus reducing or eliminating any of the *claimed* prejudice, although bifurcation of <u>Monell</u> does not remove the City as a defendant as they may be liable under the State law claims.[1]

### **Prior Proceedings**

Preliminarily, in an order dated March 15, 2010, Judge Weinstein bifurcated the <u>Monell</u> claims from the claims against the individual officers (ECF # 64).   Subsequently, there were two trials regarding individual liability in 2010, both of which resulted in deadlocked juries relating to the excessive force claim against defendant Kern.[2]

The defendants, however, grossly misstate the prior proceedings.   In June 2010, the jury was deadlocked as to Officer Kern on the issue of excessive force.   In December 2010, the jury was deadlocked as to Officer Kern on the issue of excessive force on civil rights § 1983 <u>and</u> assault and battery.   Contrary to the City's and Kern's argument, and despite the City attempts to influence the

_____

[1]Further, the City has attempted to use the instant bifurcation motions as a forum for seeking determination of the summary judgement motion.   The City previously had raised, on several occasions, that issue before Magistrate Go and it is improper to introduce said argument in their bifurcation motion.   Aside from inserting undocumented allegations as to procedure, the City muddies the waters with positions that are not pertinent to the instant bifurcation motion and the applicable standard to be applied by this Court. The instant motions should be decided solely on the merits thereof.

[2] Procedure as to the other officers is not relevant to the instant motion as they are no longer defendants.

3

Court by repeating the word "sodomy" over and over again, the only claim left to try is not "sodomy."  Indeed, in the last trial, <u>assault and battery was specifically charged to the jury</u>.  A reading of Judge Weinstein's "Jury Charge on Liability," Court Exhibit 3, dated 12/8/10, **Exhibit A** hereto, from the last trial, shows that the <u>word "sodomy" did not appear in the jury charge given to the jury, even once</u>.[3]

## STATEMENT OF FACTS

The plaintiff respectfully refers the Court to the Joint Pre Trial Order filed on June 13, 2012 (ECF 300) which sets forth the position of the parties.  Additional facts, including witnesses, will be referred to as is appropriate.

### Proof of Damages Was Allowed to Prove Liability in the Two Prior Trials As Defendants Contested that the Event Occurred at All; <u>Thus Liability and Damages are Inextricably Intertwined</u>

Relative to the prior proceedings, while there was a bifurcation order as to damages before trial began, <u>during trial proceedings</u> Judge Weinstein modified said Order and allowed proof of damages in order to prove liability.

Specifically Judge Weinstein allowed both sides to present medical testimony by physicians and medical proof to prove their liability case.   Judge Weinstein also allowed other physical evidence as to damages such as the video of the event and its aftermath; testimony of civilian witnesses who observed the injury; the entire hospital record from Brookdale Hospital; the Hospital Record from Brooklyn Hospital,  including the surgical records and procedure; and photos of plaintiff's injuries and other proof.  Thus, liability and damages are inextricably intertwined in this

---

[3]  Officer Kern's Exhibit 1 is a similar vein to the City repeating "sodomy" over and over and has no significance other than to attempt to inflame.

case.  Following is a partial list of the witnesses that testified on the liability trial that would almost, to a certainty, have to be recalled if the case was bifurcated.

**A.      Witnesses as To Damages**

The following physicians testified as to medical damages issues on the liability case during the last two trials, and the plaintiff intends to call them again on this liability case as well.   These witnesses would then be recalled on any damages trial to offer testimony as to plaintiff's future damages and sequella from the injury.   Plaintiff has no control over these health care providers as they are treating physicians, and one of them expressed extreme reluctance at having to keep returning to Court.   Said physicians are as follows:

*Larry Griffith, M.D.:*   Brooklyn Hospital Center, Brooklyn, New York.  Dr. Griffith, who performed the surgical procedure on plaintiff, testified at both prior trials regarding the plaintiff's medical treatment at Brooklyn Hospital for injuries sustained as a result of the occurrence and as to matters set forth in the Brooklyn Hospital Center records.  Dr. Griffith will be asked to offer testimony relating to future medical treatment.

*Syed Ahmed, M.D.:*  Brookdale Hospital Medical Ctr, One Brookdale Plaza Brooklyn, NY 11212.  Dr. Ahmed, the supervising attending at Brookdale, testified at both prior trials regarding the plaintiff's medical treatment at Brookdale Hospital for injuries sustained as a result of the occurrence and as to matters set forth in the Brookdale Hospital Center records.  Dr. Ahmed will also be asked to offer testimony relating to future medical  treatment.

*Randolph Gibbs, M.D.:* Brookdale Hospital Medical Ctr, One Brookdale Plaza Brooklyn, NY 11212.  Dr. Gibbs testified at the December 2010 trial that he was a physician at Brookdale

Hospital who treated Michael Mineo.  He is expected to testify again at the upcoming trial.[4]

Moreover, since several non-medical witnesses are expected to testify as to both liability and damages, bifurcation is inappropriate.  These witnesses include at least the following:

*Sgt. Levazzo* testified at the liability trial and plaintiff intends to call him as a damages witness as he observed plaintiff at the hospital.

*Sgt. Alfanao* who also testified as to plaintiff's injuries and other police witnesses.

The same may apply to any of the civilian witnesses identified by plaintiff in the Pre Trial Order.

**B.     Partial List of Evidentiary Material Related to Damages Received in Evidence During Liability Trial**

1.     *Brooklyn Hospital Record* (entire chart) consisting of several hundred pages of records (10/23/08-10/28/08) plus subsequent outpatient records were received in evidence on the liability trial– including an operative report where plaintiff had a drain inserted in his abdomen to remove pus. Ex C,  Pre Trial Order, Pltf Ex. 3.[5]

2.     *Brookdale Hospital Record*  Approximately 85 pages of records were received in evidence (the entire chart) where plaintiff was first hospitalized from October 15, 2008 to October 19, 2008. Ex C,  Pre Trial Order;  Pltf Ex. 3.

---

[4] **Rommell Washington**, LCSW, Clinical Social Worker,  St. Luke's Roosevelt Crime Victim's Treatment Center, N.Y., N.Y., will proffer testimony regarding plaintiff's PTSD and related treatment after the incident.  This was the only medical witness that did not testify that plaintiff was aware of at the time.  Upon information and belief, this is the witness that defendants claim will cause them overwhelming prejudice, which it is respectfully submitted is not so.

[5] These exhibit numbers refer to where the exhibits listed in the Pre Trial Order.  The Pre Trial Order is ECF # 300 and is attached hereto as **Exhibit C**.

3. ***Multiple photographs*** of plaintiff showing claimed injuries, including blow ups thereof (many if not all taken by police officers).Ex C,  Pre Trial Order;   Pltf. Ex. C.,  36, 37, 44.

4. ***Photos of plaintiff on gurney in hospital showing injuries***. Ex C,  Pre Trial Order;  Pltf 39.

5. ***Surveillance Videos of Occurrence and Aftermath*** showing, inter alia, the plaintiff leaning on witness **Ashley Loney** as he leaves the scene (after the occurrence). **Ex C,  Pre Trial Order**,  Pltf,. Ex.  30.

6. ***Photo montages of plaintiff at Brooklyn Hospital showing him in Hospital bed with drain***. Ex C,  Pre Trial Order;  Pltf 42, 41.

7. ***Photos of plaintiff's injuries taken by the police at Brookdale Hospital***. Ex C,  Pre Trial Order;  Pltf 43.

8. ***Video Footage of Plaintiff provided by NY1 which shows plaintiff in hospital bed and his injuries***.  Ex C,  Pre Trial Order.

There are likely other documents and photos as well that would be pertinent to both liability and damages, as set forth in the Pre Trial Order (ECF 300), including Police diagrams of plaintiff's injuries and statements.

In the event that the trial was bifurcated, the plaintiff and defendant would be required to recall multiple witnesses, including the above physicians, creating an extraordinary, and unnecessary, burden.  None of the aforementioned treating health care providers are under plaintiff's control, as they are treating doctors (unlike defendants' retained experts), and it would be a burden to co-ordinate their return for an additional trial.  Further, if the trial was unified, the plaintiff would be required to call only one additional health care provided as a certainty, Rommell Washington, LCSW.

It  is respectfully submitted that the defendant's proposal would create, not alleviate, both prejudice and inconvenience and, moreover, would waste judicial resources.  Plaintiff respectfully believes that the bifurcation is counter productive to the principles enunciated under FRCP §42 (b) and the case law cited thereunder.  Here, the jurors already will be aware that Mr. Mineo has claimed an injury, will have heard all about it at extreme length, and the small amount of additional testimony regarding sequella is what any reasonable juror would expect.  Thus, nothing is being gained, in terms of avoidance of prejudice or any economy, by bifurcating damages and requiring the physicians to return to the witness stand and add on to their prior testimony, which was almost complete.  The converse is true.

## **ARGUMENT**

Bifurcation is reserved for extraordinary cases.

As has been held by district Courts, defendants bear the heavy burden of "overcoming the fundamental presumption which favors the trial of all issues to a single jury and underlies the assumption of Rule 42(b) that bifurcation, even in personal injury actions, is reserved for truly extraordinary situations of undue prejudice.  Monaghan v. SZS 33 Assocs, 827 F.Supp. 233 (S.D.N.Y. 1993)(denying bifurcation motion in personal injury case involving severe brain injury); Ake v. General Motors, 942 F.Supp 869 (W.D.N.Y. 1996)(denying bifurcation motion in personal injury case involving death from burns; explaining that moving party bears burden of proving bifurcation is warranted).

Judge Weinstein already acknowledged that extensive medical proof must be allowed by each side for purposes of proving whether the event occurred, and, to this end, both sides submitted medical witnesses, hospital records, photographs of the injury, and other material, and, in

defendants' case, scientific proof of a quasi-medical nature.  As such, liability and damages are inextricably intertwined.  Defendants' anticipated argument that defendants may be prejudiced by juror sympathy evoked by proof of damages, arguably applies in every personal injury case.  Given the foregoing, fairness and judicial economy warrant that the case not be bifurcated.

### *POINT I*
### THE DEFENDANTS HAVE NOT ESTABLISHED THAT BIFURCATION
### <u>IS APPROPRIATE OR NECESSARY</u>

"The factors a court is to consider when determining whether to grant separate trials include whether: (1) the issues sought to be tried are significantly different from one another; (2) the severable issues require testimony from different witnesses and/or different documentary proof; (3) the extent to which the party opposing severance would be prejudiced if it were granted; and (4) the extent to which the party requesting severance would be prejudiced if it were not granted (the "Factors").  <u>See</u> <u>Lewis v. Triborough Bridge and Tunnel Auth</u>., 97 Civ. 0607, 2000 WL 423517, at *2 (S.D.N.Y. Apr. 19, 2000).  <u>Bifurcation, however, remains the exception rather than the rule</u> and "the party moving for a separate trial has the burden of showing that [separate trials are] necessary to prevent prejudice or confusion, and to serve the ends of justice."  <u>Gaffney v. Dept. Info. Tech.</u>, <u>Telecommunications</u>, 579 F.Supp.2d 455 (S.D.N.Y., 2008) (denying bifurcation).

In the case at bar, all of the <u>Lewis</u> "factors" militate in favor of plaintiff.  While other similar tests may be followed, the decision to bifurcate is within the sound discretion of the trial court. <u>Lewis v. City of New York</u>, 689 F. Supp.2d 417 (E.D.N.Y. 2010) .  Defendants will not suffer <u>any</u> prejudice from a unified trial of the plaintiff's liability claim predicated upon the actions of Officer Kern (be it the 1983 or the State Law claims) and the damages arising therefrom to Michael Mineo as well as the punitive damages claim.  A unified trial will not prejudice Officer Kern or the City

because virtually all of the medical proof, save a small amount, must be revealed to the jury to establish liability.  Indeed, given the plethora of medical proof that already has been elicited during the prior two trials (proof  one would expect on a damages trial not a liability trial), it is clear that liability and damages are inextricably intertwined.  To require a separate damages trial– or additional trial of any type–  is inapposite to judicial economy.

**A.     The Instant Case Does Not Present Extraordinary Circumstances Where Perceived Juror Sympathy Could Not Be Ameliorated By Curative Jury Charges**

In order to defeat the presumption in favor of a unified trial, defendants must satisfy a heavy burden; a showing of mere juror sympathy is insufficient.  See, e.g., Monaghan, 827 F.Supp. at 245-46.   Envisioning the opening of floodgates where every personal injury case is bifurcated, it has been held that, in order to secure bifurcation, the defendants must show that the situation is "truly extraordinary to warrant Rule 42(b) relief."  Id.  In Monaghan, the Court held that:

> "There is no doubt that [defendants] may be prejudiced to some extent in the damages phase of the single trial should either or both be found liable. But they have failed to show that this prejudice would be "undue" -- that is, that the prejudice would be any more than that which is normally experienced by a defendant who is found liable in a personal injury action involving a violent crime where the issues of liability and damages are tried to a single jury."

also Aldous v. Honda Motors, 94 Civ. 1090, 1996 U.S.Dist. LEXIS 7855, *7 (N.D.N.Y. 1996) (citing and quoting Monaghan).  Likewise, in the case at bar, defendants will be unable to show that this is the "truly extraordinary" case warranting bifurcation.  On the contrary, a bifurcation of the case at bar, would dictate that *every* personal injury case be bifurcated.

Moreover, some juror sympathy may arise even if the trial is bifurcated,  since in the liability phase of the trial the jury would know to a certainty the exact nature of the plaintiff's injury.  Judge Weinstein understood that, under the circumstances, extensive medical proof was necessary on the

liability portion of the case.  See Ake, 942 F.Supp. at 877 (denying bifurcation; jury would know decedent's car had caught fire even if bifurcated).

The issue of juror sympathy is routinely, and successfully, handled and minimized by appropriate protective measures, including cautionary warnings to the jury, limiting instructions and other instructions to the jury.  Ake, 942 F.Supp at 877 (denying bifurcation of personal injury case where decedent died in burning car; holding that curative instructions sufficed to limit juror sympathy);  Aldous, 1996 U.S.Dist. LEXIS 7855, *7 (denying bifurcation in personal injury case). It is presumed that jurors will follow the instructions of the trial judge.  "It is a fundamental proposition that a jury is presumed to follow the instructions of the trial judge." Britt v. Garcia, 457 F.3d 264, 272 (2d Cir.2006); Lewis v. City of New York, 689 F. Supp.2d 417 (E.D.N.Y., 2010) (in 1983/battery case where the plaintiff was a paraplegic, the case was not bifurcated; jurors are presumed to follow the instructions of the trial judge regarding sympathy).

In Lewis v. City of New York, 689 F. Supp.2d 417 (E.D.N.Y. 2010), the District Court, in denying bifurcation and upholding its ruling after a jury verdict, noted that "Bifurcation is ... the exception, not the rule, and the movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce."  The Lewis Court denied bifurcation despite the catastrophic nature of the injuries– the plaintiff was a paraplegic.  Lewis was a 1983/battery police case where the jury returned a verdict against an officer, and also found the City liable under the theory of respondeat superior, a situation that may occur at bar if plaintiff prevails on a battery theory against Officer Kern.  Likewise, here, since jury instructions, if sought be defendants,  will minimize alleged juror sympathy, bifurcation should be denied.

**B.**     **The Injuries Do Not Warrant Bifurcation**

Moreover, plaintiff's injuries are not those type of injuries which courts have viewed as so extraordinarily prejudicial as to necessitate bifurcation.  In fact, the scant case law cited by defendants (and other bifurcation cases) is instructive because, where bifurcation was granted, plaintiffs' injuries were utterly catastrophic, or plaintiff could not perceive the proceeding.  For example in Helminski v. Ayerst Laboratories, 766 F2d 208, 212 (6th Cir. 1985), cited by defendants, the plaintiff had a severe form of autism and could not comprehend the proceeding and his presence in the courtroom would have been prejudicial;  as such bifurcation arguably made sense.  Also cf Kreiner v. Bridgestone, 2000 WL 890432 (S.D.N.Y. 2000) (plaintiff died as a result of burns over 55% of his body and after undergoing bilateral leg amputation); Zofcin v. Dean, 144 F.R.D. 203 (S.D.N.Y. 1992) (plaintiff sole survivor of automobile accident in which wife, his two infant children, and two friends were burned and killed; damages proof would involve testimony as to his family's "burning flesh and screams of pain"); Witherbee v. Honeywell, Inc., 151 F.R.D. 27 (S.D.N.Y. 1993) (propane gas tank exploded; damages involved severe burns; also multiple defendants who bore separate and distinct liability); Colon v.Bic USA, 199 F.Supp.2d 53 (six year old plaintiff suffered dramatic burns on his torso and neck; was "engulfed in flames from the waist up;" court referred to photographs of the boy as "graphic or gruesome").  Mr. Mineo's injuries are nowhere as dramatic as the foregoing cases, although they are serious.  Moreover, in Helminski, there was no finding that liability and damages were  inextricably intertwined, as is the case in Mineo.

Defendants also rely upon Ricciutti v. NYCTA, 796 F. Supp. 84 (S.D.N.Y. 1992).  Such reliance is wholly misplaced.  In that case, the Court bifurcated the plaintiff's liability claims as to one group of defendants from plaintiff's liability claims as to another group of defendants. It was

12

not a case involving the bifurcation of liability from damages in a personal injury case.

C. **Defendants Will Dispute Plaintiffs' Damages and, Thereby, Mitigate Any Perceived Prejudice**

Defendants plan to vigorously dispute plaintiff's claims of damages and have implied at the previous trials plaintiff is a phony, liar and malingerer. Defendants are sure to evoke a similar tact at trial. Defendants have never even suggested that they will stipulate as to plaintiffs' damages. Defendants' attack of plaintiff likely will be a factor militating against any alleged juror sympathy and prejudice. For example, the compensatory damages issue that remains, upon information and belief that of Rommell Washington who treated plaintiff for PTSD, will be offset by defendants' psychiatrist, Dr. Nasser, thus ameliorating any perceived prejudice.

*POINT II*
**PLAINTIFFS WILL BE UNFAIRLY PREJUDICED BY BIFURCATION**

The Court must consider the prejudice which bifurcation would cause the party opposing the motion. Lewis v. Triborough Bridge and Tunnel, 97 Civ. 0607 (PKL), 2000 U.S.Dist.LEXIS 4982 (S.D.N.Y. 2000)(denying bifurcation).

Here, the plaintiff would have the unique burden of having to subpoena multiple physicians for a liability phase of the trial, then, again for a damages phase of the trial and, quite possibly, based upon Court rulings, for the Monell and punitive damages phases of the trial. The prejudice to plaintiff is overwhelming in terms of expense, logistics, and practicality. Defendants, who have two paid experts, do not have the same concern.

As noted by Thomas J. McAvoy, Chief U.S. District Judge of the Northern District of New York, in Aldous v. Honda Motor Co., Ltd., No. 94–CV–1090,1996 U.S.Dist. LEXIS 7855; 1996 WL 312189 (N.D.N.Y. May 30, 1996):

13

> "the overlap of the injury evidence and testimony discussed *supra* poses the problem of whether to allow those witnesses to testify twice, or to simply rely on the jury's ability to 'carry-over' that evidence from the liability phase to the damages deliberations. The former obviously taxes the Courts (and plaintiff's) resources, while the latter raises fairness concerns regarding plaintiff's opportunity to fully litigate both these issues."

No. 94–CV–1090, 1996 U.S.Dist. LEXIS 7855; 1996 WL 312189 (N.D.N.Y. May 30, 1996). Thus, the Aldous case recognized the inherent risk of unfairness to plaintiff in adopting the procedure advocated by the defendants herein.   Similarly, it should not be adopted here.

Further, plaintiff would be required to testify again as to an emotional issue that involved a most sensitive subject and a personal area of his body.  Bifurcation would require plaintiff to endure the hardship of likely testifying multiple times as to the same thing and endure what promises to be embarrassing repetitive  cross-examination on subject matter of a very graphic nature concerning the baton and penetration into his anal area,  etc.  Thus bifurcation would create an unfair burden to the plaintiff.  The argument that the PTSD injury was not included is a red herring because physical injuries of a significant nature, and arguably worse, were.  The jury already knows.

### *POINT III*
### BIFURCATION WILL NOT SERVE THE INTERESTS OF JUDICIAL ECONOMY

Despite defendants' arguments to the contrary, "separate trials remain the exception rather than the rule, regardless of the nature of the action and generally, efficient judicial administration favors having only one trial whenever possible." Monaghan, 827 F.Supp. at 245; also In re Blech Sec. Litig., 94 Civ. 7696 (RWS), 2003 U.S. Dist. LEXIS 4650 (S.D.N.Y. March 26, 2003). Defendants must show that bifurcation creates a dramatic economy in the face of "the inevitable lost time in conducting two opening and closing, two charges, and twice empaneling the jury." Aldous, 1996 U.S.Dist. LEXIS 7855; Lewis, 2000 U.S.Dist.LEXIS 4982, at *13, fn.3.  While defendants'

argue that the case would be tried before the same jury, here they argue that the <u>Mineo</u> case be *quadrified*: (1) liability against Officer Kern, (2) followed by economic damages, (3) followed by punitive damages, (4) followed by <u>Monell</u>.   Such a concept is a waste of judicial resources to the extreme and makes the case unmanageable.   The chance of the entire case being tried by the same jury is probably close to zero.   Any argument by the defendants that the same jury will try the entire case should not carry any weight.

**A.      Since Plaintiffs Are Likely to Succeed in Proving Liability,
          <u>Judicial Economy Will Not Be Served By Bifurcation</u>**

Judicial economy will not be advanced by bifurcating this trial.   It is axiomatic that a single trial would take less time and be resolved sooner that separate trials.   The Court would only have to prepare one charge.   There would be less conferencing.   Time at trial only would be reduced if defendants successfully defeat all of plaintiffs' claims of  liability.   <u>Aldous</u>, <u>supra</u> at * 5-6. Defendants have made no showing that they would be likely to succeed on the issue of liability.

Plaintiffs, on the other hand, have come close to succeeding in the two prior trials.   In the trial in June 2010, Judge Weinstein utilized 12 jurors, and 11 out of 12 were in favor of a plaintiff 1983 verdict, as was documented in a variety of news sources immediately after the trial including the Post, Daily News and New York Times, with the sole hold out being the wife of an NYPD School Safety Officer.   See Mosley Declaration.

In the trial in December 2010, 8 out of 12 jurors were in favor of returning a battery verdict or 1983 in plaintiff's favor.   <u>See</u> Jury Verdict Note, **Exhibit B**, 12/14/10.   This number had actually been higher at one point but plaintiff does not have access to the Note that documents same from Pacer.

The greater likelihood, based upon the two past trials, is that plaintiff will prevail on the issue

of liability by means of one or all of the posited theories, in which event, bifurcation would cost all the parties and the Court more time, more money, and more resources than a single trial.

In any event, the additional proof required for a damages portion of the trial likely will add a day or two to the overall length of the trial since most of the medical proof will have been elicited. On the other hand, if the trial is bifurcated (or in multiple phases as defendants seek), the proceeding may be strung out as the physicians would have to be re-scheduled for a second proceeding. Thereafter a punitive damages trial would be held; then a <u>Monell</u> trial.    There would be new charges and conferences each time.    As stated by the District Court in <u>Aldous</u>, <u>supra</u>, "While the avoidance of three to four days is not an insignificant savings, it represents a less compelling economy when balanced against the inevitable lost time in conducting two openings and closings, two charges, and twice empaneling the jury."  1996 U.S. Dist. LEXIS 7855.  Under defendants application there would be multiple openings and closings, charging and jury empaneling.   Such is an abusive and burdensome procedure that should be rejected.

**B.**  **Many Key Witnesses Would Have to Testify Twice (or More) if the Case Were Bifurcated**

"Bifurcation is inappropriate where the same witnesses may be needed to testify as to both the issues of liability and damages, and evidence pertaining to these issues may well overlap." <u>Aldous v. Honda Motors</u>, 94 Civ. 1090, 1996 U.S.Dist. LEXIS 7855 (N.D.N.Y. 1996)(internal quotations omitted); <u>Bowers v. Navistar</u>, 888 Civ. 8857 (SS), 1993 U.S.Dist.LEXIS 6129, at *8 (S.D.N.Y. 1993)(bifurcation of personal injury trial denied).  Judicial economy would not be served in this case because multiple witnesses would have to testify during both phases of the case (assuming standard bifurcation).  Bifurcation, therefore, would require the parties to submit to two separate yet repetitive proceedings.  Plaintiff has set forth above the doctors and some of the  lay

16

witnesses who will likely be required to testify again if bifurcation was granted, including at least three physicians (just from plaintiff's side alone).   Additionally, the same evidence would be introduced on the liability and damages phase, as plaintiff has set forth above.  See Aldous v. Honda Motor Co., Ltd., No. 94–CV–1090,1996 U.S.Dist. LEXIS 7855, 1996 WL 312189 (N.D.N.Y. May 30, 1996) ("[B]ifurcation is inappropriate where the same witnesses may be needed to testify as to both the issues of liability and damages, and ... evidence pertaining to these issues may very well overlap").

*POINT IV*
**THE ISSUES OF LIABILITY AND DAMAGES ARE INTERMINGLED**

Bifurcations in not appropriate where there is an intermingling of the evidence of liability and damages or, in other words, where witnesses and documentary evidence "overlap."  Bowers v. Navistar, 888 Civ. 8857 (SS), 1993 U.S.Dist.LEXIS 6129, at *8 (S.D.N.Y. 1993)(bifurcation of personal injury trial denied); In re Blech Sec. Litig., 2003 U.S.Dist.LEXIS 4650, at *41-42. Plaintiffs already have indicated that 3 medical witnesses will have to testify at both the liability and damages phase of the trial (supra) to offer testimony as to plaintiff's condition at the time of, and after,  the accident.

Moreover, in this case plaintiffs will offer medical proof during the liability phase of the trial for several key reasons including: (1) medical proof of the effect and causation of Michael Mineo's injury and (2) documentary evidence (medical records) that contain observations or information that is pertinent to liability issues, thus militating in favor of a unified trial.  See, e.g., Aldous, supra.

Indeed, "in light of the interconnectedness of the issues there will be an inevitable overlap of witnesses and documentary evidence central to both liability and damages claims" and bifurcation should be denied.  Monaghan, 827 F.Supp. at 243.

17

**A.      Medical Evidence is Necessary to Refute Claims of Plaintiff's
         Contributory Negligence**

In the Pre Trial Order, defendants set forth that plaintiff's conduct was the cause of the subject event.  ECF # 300 at page 5.  Defendants have made clear that it is their position, as well, that the injury to Mr. Mineo was not as a result of the misuse of the baton (Asp)  by Officer Kern. The plaintiff will have to respond to these allegations at the liability phase of the trial via offering the aforesaid medical proof of causation as was done in the prior trials.

**B.      Evidence Pertinent to Liability is Present in the Medical Records
         and Other Documentary Evidence**

The hospital records were reviewed by Dr. Ahmed, Dr. Griffith and Dr.  Gibbs during the prior cases.   Defendants' paid expert colo rectal surgeon also utilized the hospital records extensively on the issue of causation.  Virtually every aspect of the medical records was examined during the prior trials.  As such, the hospital records are indispensable to both the liability and damages portion of the <u>Mineo</u> case, demonstrating that both liability and damages are inextricably intertwined.

Rather than be redundant, the Court is respectfully referred to the listing of documentary evidence under the Statement of Facts.   Said documents, photos and films are necessary to prove liability <u>and</u> damages.  As  held in <u>Monaghan</u> and <u>Aldous v. Honda Motors</u>, where evidence of damages is necessary in the liability phase of the trial, a court should deny bifurcation.  <u>Monaghan</u>, <u>supra</u>;  <u>Aldous</u>, 1996 U.S.Dist. LEXIS 7855.

*POINT V*
**PLAINTIFF MADE A CLAIM OF PUNITIVE DAMAGES,
<u>WHICH INTERTWINES ISSUES OF LIABILITY AND DAMAGES</u>**

Where plaintiff, as here, specifically has alleged punitive damages in the Complaint, a jury

must examine the nature of defendants' conduct in order to determine whether said conduct gives rise to gross negligence or reckless disregard for the well being of the plaintiff.  Silivanch v. Celebrity Cruises, Inc., 171 F. Supp. 2d 241 (S.D.N.Y. 2001)(addressing conditions for punitive damages).  Therefore, issues of liability and negligence are very much intertwined with the proof of compensatory damages.

Defendants rely upon asbestos cases when they argue that bifurcation is preferred.  Even so, in Simpson v. Pittsburgh Corning Corp., 901 F.2d 277 (2d Cir. 1990), an asbestos case relied upon by defendants, the Second Circuit upheld the denial of bifurcation where punitive damages were tried with the liability and damages claim resulting in a multi million dollar punitive  award.  The jury was instructed that punitive damages may be awarded if the defendant's conduct was determined to be  "wanton and reckless," which was further explained as "done in such a manner and under such circumstances as to show heedlessness of,  or utter disregard of the effect upon the rights and safety of others...." This instruction was in substantial conformity with New York practice.  See New York Pattern Jury Instructions--Civil 2:278 (2d ed. 1974).

Judicial economy would not be served by bifurcation, and plaintiff would be prejudiced because the standard of conduct necessary to establish punitive damages overlaps with defendants' state of mind in each of the claims in this case.

Further, if, for any reason, the jury was disbanded, due, for instance, to a missing juror or scheduling, which as a practical matter often may happen, plaintiff would be faced with the herculean and redundant task of offering all of the liability proof again to a new jury.  The jury should properly be allowed to examine the conduct of officer Kern and determine whether punitive

19

damages should be awarded.   The instant case is not an asbestos case such as <u>Simpson</u>,[6] <u>supra</u>, or a complex contract case such as <u>Smith v. Lightning Bolt</u>, cited by defendants.   Defendants have not cited any authority whereby a 1983 police case should have a separate punitive damages trial; especially when there are pendant State law claims.   As such bifurcation of punitive damages should be denied.

---

[6] <u>Simpson v. Pittsburgh Corning Corp</u>., 901 F.2d 277 (2d Cir. 1990) came after <u>Smith v. Lightning Bolt</u> and upheld the denial of bifurcation despite defendant repeatedly seeking it.

## <u>CONCLUSION</u>

Based upon the foregoing, plaintiff respectfully requests that the Court deny defendants'

motion for bifurcation.


Dated: July 15, 2012
          New York, NY

                                          Respectfully submitted,
                                          Shafran & Mosley, P.C.
                                          Stephen Jackson, Esq.


                                          _____

                                          By: Kevin L. Mosley, Esq
                                          Attorneys for Plaintiff
                                          44 Church Street
                                          White Plains,  New York 10601
                                          (914) 448-7000
                                          (914) 448-7007